■ KWONG ON BANK, LIMITED, Appellant, v MONROSE KNITWEAR CORPORATION, Respondent.—Order, Supreme Court, New York County, entered September 4, 1979, denying plaintiff's motion for summary judgment, is reversed, on the law, so far as appealed from, and plaintiff's motion for summary judgment is granted, and judgment directed in favor of plaintiff for the amount sued on, together with interest and costs, and costs of this appeal. In this action on a dishonored check, the only issue of fact really attempted to be tendered by defendant is whether plaintiff bank was a holder in due course, or whether before giving value on the instrument, plaintiff had notice of any defense to the instrument. Plaintiff's officers denied they had such notice. Defendant has submitted an affidavit by an officer of defendant saying that, at a meeting with certain officers of the bank on June 23, i.e., after the bank had become owner of the check and after it had been dishonored, one Johnny Yiu had stated that he had made known "to a key bank officer of Kwong On Bank as early as June 7th [i.e., five days before the bank took the check] that Mr. Chiang [payee's officer] had been acting strangely and could not be found. To emphasize Mr. Yiu's concern, he stated he told the bank officer on June 7th, or before, that Monrose [defendant] had stopped payment on two substantial checks drawn to the order of Orient [payee]." Apart from certain inherent improbabilities in this statement, the statement is hearsay. Such hearsay may still raise an issue requiring denial of summary judgment provided that the opposing party demonstrates "acceptable excuse for his failure to meet the strict requirement of tender in admissible form" of evidentiary proof. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1068.) Here no excuse is offered for the failure to produce an affidavit by Mr. Yiu. Concur—Sullivan, J. P., Ross, Silverman and Bloom, JJ.

Lupiano, J., dissents in a memorandum as follows: This is an action by a Hong Kong bank, plaintiff Kwong On Bank, Limited, against the drawer of a dishonored check, defendant Monrose Knitwear Corporation, which had been negotiated to the bank by its original payee, Orient Centre Associates. The check was issued by Monrose to Orient on May 31, 1978 as a deposit against textiles to be delivered to Monrose, a New York textile importer, by Orient. The check was drawn on Monrose's account with Chemical Bank in New York and was negotiated by Mr. Edward Kui Chung Chiang on behalf of Orient to plaintiff on June 12, 1978. The check was presented to Chemical Bank for collection, but was returned to plaintiff unpaid on June 29, 1978, marked "payment stopped" by reason of a "stop payment" order placed by Monrose on June 2, 1978. On June 23, 1978, a meeting was held in Hong Kong between officials of plaintiff bank and the vice-president and secretary of defendant, Mr. Richard Bernstein. The memorandum of that meeting, prepared by the bank officials and the affidavit of Mr. Bernstein submitted in opposition to plaintiff's motion for summary judgment, disclose that there were also present at that meeting representatives of three textile manufacturers; to wit, Pak Fook Garments, Ltd. (Mr. Johnny Yiu), Leeco Textile, Ltd. (Mr. W. K. Chung) and Wearfree Apparel, Ltd. (Mr. Andrew Cheng). Mr. Bernstein, on behalf of defendant, states in his affidavit that at this meeting Mr. Johnny Yiu "stated, in particular, that he had made known to a key bank officer of [plaintiff] as early as June 7th that Mr. Chiang [of Orient] had been acting strangely and could not be found. To emphasize Mr. Yiu's concern, he stated he told the bank officer on June 7th, or before, that

Monrose had stopped payment on two substantial checks drawn to the order of Orient. He repeated that he had urged a 'stop' or 'freeze' on Chiang's accounts." While the memorandum of meeting prepared by the plaintiff bank does not disclose this specific representation of Mr. Yiu, it does support this statement of Mr. Bernstein in other critical particulars. Thus, the memorandum discloses that defendant's vice-president came to trace Mr. Chiang who had apparently disappeared while owing defendant some $80,-000 deposited by defendant with Mr. Chiang for purchasing textiles in advance of shipment. The other manufacturers were present because Mr. Chiang apparently owes each substantial amounts of money. Most importantly, in the memorandum it is stated: "The manufacturers * * * told us that * * * during this month [June 1978], the payments by Mr. Chiang were delayed. [Some of the cheques were being returned due to incorrect signature] However, they cannot find [Mr. Chiang] * * * Under such circumstances, they are afraid that they are also being cheated." Plaintiff bank contends that it is a holder in due course in that it purchased the check for value on June 12, 1978 in good faith and without notice of the "stop payment" order or any defense against payment on the part of any person. Accordingly, the bank maintains it was not put on notice until the June 23 meeting alluded to above. Defendant to the contrary contends that the bank was put on notice by the purported representations made by Mr. Yiu to an official of the bank on June 7, 1978 prior to the negotiation of the check to the bank. In the absence of an affidavit of Mr. Yiu, the assertion of these representations contained in the affidavit of defendant's vice-president is based on hearsay. No explanation is given by the defendant, a domestic corporation with offices in New York City, nor by plaintiff, a Hong Kong bank, relevant to the failure of Mr. Yiu, who is employed in Hong Kong by Hong Kong textile manufacturer, to submit an affidavit. Despite the memorandum prepared by the bank's employees Mr. Torii and Mr. Cheung of the bank's International Business Department which gives support to the statements of defendant's vice-president, no affirmation or affidavit is submitted by either of them respecting the making of this critical representation allegedly made by Mr. Yiu at the June 23 meeting. Thus, although the plaintiff submitted a further affirmation of its assistant manager, Mr. K. Wang in response to Mr. Bernstein's affidavit, such affirmation is noticeably silent as to what Mr. Yiu did or did not state at the June 23 meeting. In essence, plaintiff chose to merely rely on the claim that the Bernstein affidavit does not raise an issue warranting denial of summary judgment to plaintiff because it is based on hearsay. To reiterate, this position fails to consider the evidentiary import of plaintiff's own memorandum of the June 23 meeting. As aptly noted in *Phillips v Kantor & Co.* (31 NY2d 307, 311-312): "Summary judgment should be denied where there is any doubt, at least any significant doubt, whether there is a material, triable issue of fact (e.g., *Glick & Dolleck v. Tri-Pac Export Corp.,* 22 N Y 2d 439, 441; *Exchange Leasing Corp. v. Bundy,* 29 A D 2d 828; 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶ 3212.05c). As stated in the *Exchange Leasing* case (29 A D 2d 828, *supra)* 'Rules of evidence should be guardedly and cautiously applied on an application for summary judgment, particularly where there are many exceptions to general rules and where the application of a rule of evidence or the exceptions thereto can best be determined upon evidence offered at a trial' *(id.).* True, it has been said that inadmissable evidence is insufficient to defeat a motion for summary judgment (e.g., *Cohen v. Pannia,* 7 A D 2d 886; *Ford v. Hahn,* 269 App. Div. 436; 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶ 3212.05c, at p. 32-142.37, but compare ¶ 3212.05; 6 Carmody-Wait 2d, New

York Practice, § 39:29). The case of *Indig v. Finkelstein* (23 N Y 2d 728) restates the rule, however, applicable to summary judgment and indicates that an affidavit setting forth names of witnesses, the substance of their testimony, how it was known what their testimony would be, and how the witnesses acquired their knowledge, might be sufficient to defeat a motion for summary judgment, without the witnesses' own affidavits *(id.,* at p. 730). In England, where summary judgment originated, the motion is decided, as in the United States, on affidavits * * * 'Hearsay evidence is not to be shut out' (50 English and Empire Digest 408; *Harrison v. Bottenheim,* 26 W.R. 362, 363 [1878])." Of course, the acceptance of Mr. Bernstein's hearsay statement concerning Mr. Yiu's representation to an officer of plaintiff bank on June 7, does not amount to an admission on the part of plaintiff that such notice was in fact given. What it does give rise to is an issue of fact, fairly arguable, respecting the status of plaintiff as a holder in due course without notice of any defense to the instrument, sufficient to defeat plaintiff's motion for summary judgment. The doctrine of "admission by silence" exception to the hearsay rule (Fisch, New York Evidence [2nd ed], § 792; 21 NY Jur, Evidence, § 296) obtains some relevance on the issue of whether in fact such statement was made by Mr. Yiu *at the June 23 meeting,* not on the issue of the truthfulness of that statement. Research has failed to disclose a departure from the principle that "summary judgment is a drastic remedy which should be withheld whenever there is any doubt as to the existence of a triable or arguable issue of fact *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395)" *(Pollard v Meyer,* 61 AD2d 766, 767). On this record, Special Term was correct in determining to deny summary judgment relief. The key to the Court of Appeals holding in *Friends of Animals v Associated Fur Mfrs.* (46 NY2d 1065) is their view that on the record therein the plaintiff, in opposing defendants' motion for summary judgment, tendered no evidentiary proof of actual malice in any form apart from mere conclusory assertion, notwithstanding that the burden on the party opposing summary judgment relief *is not as heavy as the burden on the party seeking to obtain such relief.* The statement in that case regarding "the rule with respect to defeating a motion for summary judgment," cited by the majority herein, is dictum and should not be construed as rendering that rule *less flexible* than has theretofore been outlined in numerous case law (see *Phillips v Kantor & Co., supra; Indig v Finkelstein,* 23 NY2d 728; see, also, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3212, C3212:18 entitled "Denying Motion Based on Incompetent Evidence"). Parenthetically, the Court of Appeals rationale in *Friends of Animals v Associated Fur Mfrs. (supra),* did not discuss in the context of the circumstances therein the effect of the observation by the United States Court of Appeals in *Dyer v McDougall* (201 F2d 265). Discussing circumstances where a party moving for summary judgment endeavors to sustain his burden by self-serving statements and the party opposing the motion bases his opposition on the necessity of subjecting movant to the critical time-honored truth-testing process of a jury trial, i.e., to the necessity of subjecting the movant to cross-examination in open court, the court stated (p 269): "whether by an examination in open court the plaintiff might extract from the * * * witnesses admissions which he would not have got on * * * depositions * * * Although this is * * * a tenuous possibility, we need not say that there could never be situations in which it might justify denying summary judgment. It might appear for example that upon a deposition [or in an affidavit in support of a motion for summary judgment] a witness had been recalcitrant, or crafty, or defiant, or evasive, so that the

immediate presence of a judge in a court-room was likely to make him tell more. That would be another matter; and it might be enough". To this same end may be cited the rationale of the United States Court of Appeals for the Third Circuit in *Johnson v Baltimore & Ohio R. R. Co.* (208 F2d 633) and most importantly the common sense underlying Judge Peckham's analysis in *Becker v Koch* (104 NY 394). It is well to recall that on motions for summary judgment "issue-finding, rather than issue-determination, is the key to the procedure" *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404, citing *Esteve v Abad,* 271 App Div 725, 727). "[S]ummary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue" *(Moskowitz v Garlock,* 23 AD2d 943, 944) or where the issue is arguable *(Barrett v Jacobs,* 255 NY 520, 522). We must always retain the perspective that the granting of the motion "is the procedural equivalent of a trial" *(Crowley's Milk Co. v Klein,* 24 AD2d 920). So important is this latter tenet, that clarification by the Court of Appeals as to whether it is, in fact, liberalizing the parameters for the attainment of this drastic remedy is warranted. In the present state of the law, I do not read *Friends of Animals v Associated Fur Mfrs. (supra)* as mandating the granting to plaintiff of summary judgment on the record herein. Settle order.