OPINION OF THE COURT
William D. Friedmann, J.
Plaintiff seeks partial summary judgment pursuant to CPLR 3212 (subd [e]) praying for return of his deposit of $2,000, on the purchase of a new automobile and for severance of that part of his single cause of action, calling for punitive damages.
Plaintiff further seeks that defendant’s answer and counterclaim of $700 be stricken.
CPLR 3212 (subd [e]) authorizes partial summary judgment, and it expressly applies to part of a single cause of action as well as to separate causes of action. The provision of CPLR 3212 (subd [e]) permitting partial summary judgment to be granted “on such terms as may be just” justifies a broad range of procedural tools such as severance, stays, separate trial and the like. Nothing proposed by plaintiff could not be procedurally implemented, if in fact, plaintiff has established by his proof, that there is no substantial issue of fact with respect to the return of his deposit, and therefore establishes that there is no necessity for a trial, with respect to that issue.
In searching the summary judgment record before me, I find that the party’s new car purchase agreement is af *1099 fected and controlled by section 396-p of the General Business Law of the State of New York which was enacted in 1978. This section in substance states that any contract for the sale of a new motor vehicle to a retail dealer or to a consumer which provides for a price increase after the contract is entered into shall be void and wholly unenforceable. Section 396-p reads in total as follows:
“1. Any covenant or agreement in connection with or collateral to any contract entered into between (a) a manufacturer or distributor of new motor vehicles and a retail dealer thereof, or (b) a retail dealer of new motor vehicles and a consumer, pursuant to which the price of such motor vehicle to the dealer or to the consumer may be increased after such contract has been entered into shall be deemed to be void as against public policy and wholly unenforceable.
“2. Every contract provided for in subdivision one of this section shall contain a conspicuous provision in bold face type stating that the price contained in such contract is the final contract price to which the parties have agreed, and that no additional fee or charge may be imposed or collected. The provisions of this section shall be limited to the sale of those new motor vehicles for which the dealer has a bona fide customer order as evidenced by a written sales agreement with a retail customer.”
The legislative history of the section indicates that the Legislature had concluded that the purpose of entering into a written contract of this type is to assure that the parties to it have a clear and definite understanding of their obligations, under the agreement and that “legislation would guarantee that buyers and sellers would have a firm understanding as to the final and agreed upon purchase price in a contract for the sale of new motor vehicles.” The legislative history of section 396-p of the General Business Law pregnant with concern over price increases which take effect after contract signing:
“Increased costs of production typically result in an increase in the cost of new motor vehicles to dealers, which may be translated into higher retail prices charged to customers. Many contracts for retail purchase of new motor vehicles contain an inconspicuous clause making the *1100 consumer liable for price increases initiated by manufacturers subsequent to signing the contract. This has been a source of confusion, and of frequent consumer complaints.
“This bill is aimed at serving the interests of consumer protection by enforcing the integrity of written contracts as the final and complete form of the agreement between the seller and the purchaser. The bill would clarify the contractual obligations imposed, and would insulate consumers from price increases occurring after the written sales agreement has been signed.
“Since the bill’s provisions apply equally to wholesale (i.e., dealers) as well as retail purchases of new motor vehicles, it is unlikely that dealers would be forced to absorb the cost of a manufacturer’s price increase. The effective date of the bill should provide sufficient advance time for dealer and manufacturers/distributors to make the necessary modifications in their sales contracts.” (Memorandum in support of NY State Div of Budget dated Aug. 3, 1978 contained in bill jacket of L 1978, ch 736.)
I have not been able to uncover any decisions considering section 396-p which, as above stated, apply to this new motor vehicle purchase agreement and which makes such agreement, from its inception, “void *** and wholly unenforceable.” A void contract is one which cannot have any legal effect. (McCall v Frampton, 99 Misc 2d 159; Restatement, Contracts, § 512; Calamari & Perillo, Contracts, § 9.) Such void contracts are treated as if the agreement had never been entered into, and, generally, the courts will leave the parties to the void agreement where it finds them. (Sternaman v Metropolitan Life Ins. Co., 170 NY 13; Levin v Levin, 253 App Div 758; Courtney v Riordan, 192 Misc 53; Sturm v Truby, 245 App Div 357; Calamari & Perillo, Contracts, § 378.) Although such an agreement has all the outward forms of a contract, it is, nevertheless, void and unenforceable; hence, it is not a contract at all.
Various types of agreements are considered illegal by statute and, generally, will not be enforced by the courts. There are statutes under which only one party is a wrongdoer since the statute was passed to protect the other party. Blue Sky Laws are a typical illustration of such statutes. *1101 (6A Corbin, Contracts, § 1540.) Other examples include usury statutes, licensing statutes and gambling statutes. In such cases, generally, the innocent party may enforce the “contract”. (Bolivar v Monnat, 232 App Div 33.)
In order to remove the impediment of illegality, and breathe new life into and revive an otherwise “non-contract”, such as the one under consideration herein, the following must occur: A final and firm purchase price must have been established and been agreed to by the plaintiff buyer, who is the party for whose' protection section 396-p of the General Business Law, which initially voided the new car purchase agreement, was enacted. (Restatement, Contracts, § 604; 6A Corbin, Contracts, §§ 1540,1541.) If a final and firm purchase price has been agreed upon by the parties, the contract has been removed from the applicable “void and unenforceable” sanction of section 396-p, and a new contract, wholly enforceable, will have been created. (Reiburn v Roseman, 22 NY2d 143; Klienschmidt Div. of SCM Corp. v Futuronics Corp., 41 NY2d 972; Steinlauf v Delano Arms, 15 AD2d 964; Uniform Commercial Code, §§ 2-204, 2-305.)
I find, from the record before me on the motion for summary judgment, that a substantial issue of fact is presented as to whether there was a revived agreement between the parties following the establishment of a final purchase price for the new motor vehicle in question. Also, there is a fact question as to whether the plaintiff buyer was ever afforded the opportunity to affirm the purchase agreement, after the final purchase price was established, and whether he did or did not, in fact, affirm it.
Following the establishment of a final purchase price, plaintiff buyer contends that he was not afforded the opportunity to disaffirm the purchase agreement and, in fact, did not affirm: “(8) That in or about May of 1979, the Defendant, unilaterally and without notice and without giving Plaintiff an opportunity to disaffirm the contract pursuant to paragraph 2 thereof, increased the price of the aforesaid automobile.” (Plaintiff’s affidavit in support of motion for summary judgment.)
Defendant contends that plaintiff was afforded said opportunity to affirm the contract and, in fact, did affirm it:
*1102 “(3) On or about May 24,1979, Plaintiff was advised that the automobile had been delivered to Defendant and Plaintiff was advised of the price of the vehicle. Plaintiff agreed to pay the new price, affirmed the order and further agreed to the purchase of new items to be added to the vehicle prior to delivery, namely, keyless full alarm system; polyglycoat; rustproofing; kar kote; bumper guards; body side moldings; undercoat and audiovax AM/FM radio. Plaintiff gave a check in the amount of $897.12 as an additional deposit for the items ordered but subsequently stopped payment thereon. This was prior to May 31, 1979, when Plaintiff claims he disaffirmed the contract. This statement by the Plaintiff is incorrect.
“(4) In reliance upon Plaintiff’s order, the affirmation of the new price and the order for additional dealer-installed options, Defendant, in good faith, installed said options on said automobile prior to being informed that Plaintiff had stopped payment on the check.
“(5) Contrary to the statement contained in paragraph 8 of Plaintiff’s affidavit, Plaintiff was given notice of the new price, agreed to it and contracted for additional options to be installed on the vehicle, thereby affirming the contract. At this time the Plaintiff could have disaffirmed his contract, but he did not. His actions or (sic) ordering additional dealer-installed options was an affirmation of the contract.” (Affidavit in opposition of Edward B. Menin, President of North Shore Flushing.)
Summary judgment, partial or complete, is often termed a drastic remedy and will not be granted if there is any doubt as to the existence of a triable issue. (Moskowitz v Garlock, 23 AD2d 943; Kwong On Bank v Monrose Knitwear Corp., 425 NYS2d 572; Fierro v Mauro, 104 Misc 2d 419; Renda a Frazer, 100 Misc 2d 511.) If an issue is arguable, trial is needed and the motion must be denied. (Barrett v Jacobs, 255 NY 520; Friends of Animals v Associated Fur Mfrs., 61 AD2d 141.) Accordingly, I find that whether plaintiff buyer had the opportunity to affirm the void agreement, after the final and firm purchase price had been established, and whether plaintiff affirmed the “void” new motor vehicle purchase agreement thereby creating a new and viable agreement is in doubt and is *1103 arguable, requiring a trial of those issues. Therefore, the instant motion is denied.