UNITED STATES of America, Appellee,

v.

Joseph BARLETTA, Appellant.

UNITED STATES of America, Appellee,

v.

Thomas FONTANELLO, Appellant.

Nos. 75–1530, 75–1532.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1977.

Decided June 23, 1977.

Rehearing Denied Dec. 8, 1977.

Wilbur L. Pollard and Jerome F. X. Waterman, Kansas City, Mo., for appellants; Norton & Pollard, Inc., Kansas City, Mo., on brief for appellant Barletta.

Gary Cornwell, Atty., Dept. of Justice, Crim. Div., Kansas City, Mo., for appellee; Bert C. Hurn, U.S. Atty., Gary Cornwell, Sp. Atty. and Edward D. Holmes, Sp. Atty., U.S. Dept. of Justice, Kansas City, Mo., on brief.

Before VOGEL, Senior Circuit Judge, and LAY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

In 1975 Joseph Barletta and Thomas Fontanello, along with Nicholas Civella, Anthony Thomas Civella and Frank Anthony Tousa, were convicted in the United States District Court for the Western District of Missouri [1] of having unlawfully conspired to violate 18 U.S.C. §§ 1084 and 1952.[2] Their convictions resulted from their involvement

---

1. The Honorable William R. Collinson, United States District Judge.

2. Section 1084(a) makes it an offense for any person who is engaged in the business of betting or wagering knowingly to use a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers. Section 1084(b) provides that nothing in the section is to be construed as prohibiting

the interstate or foreign transmission of news reports concerning sporting events or information dealing with betting or wagering on a sporting event from a state in which betting or wagering on the event in question is legal to a state in which betting or wagering on the event is also legal.

Section 1952 makes it a federal crime for any person to travel in interstate commerce or to use any facility of interstate commerce, including the mail, to distribute the proceeds of any unlawful activity or to otherwise promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on of any unlawful activity.

in a large scale illegal bookmaking gambling operation in Kansas City prior to 1970. The government's case against the five men consisted largely of tape recordings of telephone conversations that had been intercepted under an authorizing order issued by District Judge Collinson pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 et seq.

Section 2518(1)(b)(iv) provides that an application for intercepting authority must identify "the person, if known, committing the offense and whose communications are to be intercepted." And § 2518(4)(a) provides that the order granting such authority must identify "the person, if known, whose communications are to be intercepted." Those requirements are generally referred to as the "identification requirements" of the Act, and a person is "known" and must be identified if at the time of the application and order the government had probable cause to believe that the person was committing the offense and that his communications were likely to be intercepted. *United States v. Kahn,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974).

Insofar as here pertinent, § 2518(8)(d) provides that within a reasonable time but not later than ninety days after the expiration of the period for which an interception is authorized the judge issuing the authorizing order shall cause to be served on the persons named in the order, "and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice," an inventory which shall include notice of (1) the fact of the entry of the order; (2) the date of the entry and the period of authorized interception; and (3) the fact that during the period wire or oral communications were or were not intercepted. On a showing of good cause the judge may extend the time for the service of inventories. On motion of an interceptee the judge "may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice."

The requirements set out in § 2518(8)(d) are generally called the "inventory requirements." It will have been observed that an inventory must be served on all persons identified in the authorizing order and must be served on additional persons whose communications have been intercepted if the authorizing judge in the exercise of his discretion determines that such persons ought to be served. Obviously, as far as discretionary inventories are concerned, an issuing judge must depend upon government prosecutors to advise him as to whose communications have been intercepted so that the judge can determine who should be served with discretionary inventories.

All of the defendants in this case filed various pretrial motions including motions to suppress the wiretap evidence. Barletta and Fontanello contended, among other things, that the evidence should have been suppressed as to them because of the failure of the government to cause them to be served with discretionary inventories under § 2518(8)(d).

The motions to suppress and other motions were denied. Thereafter the defendants waived trial by jury. The case as against the Civellas, Tousa and Barletta was submitted on stipulations of fact. Fontanello joined in the stipulations to some extent, but insisted that the issue or issues with respect to which he had not stipulated be tried to the court without a jury.

The district court found all of the defendants guilty and sentenced them to imprisonment, and all of them appealed.

When the case reached us the state of the law was one of uncertainty, and there was a sharp conflict in authority as to the effect to be given to a failure of the government to comply literally or substantially with the identification or the inventory requirements of the Act. And at that time there was pending in the Supreme Court on certiorari a review of the decision of the Court of Appeals for the Sixth Circuit in *United States v. Donovan,* 513 F.2d 337 (6th Cir. 1975), *cert. granted,* 424 U.S. 907, 96 S.Ct. 1100, 47 L.Ed.2d 310 (1976).

This court took the position that substantial compliance with the requirements in question was sufficient, but that a failure on the part of the government to substantially comply with the requirements called for suppression of the evidence in question. We found that there had been substantial compliance in the case of the Civellas and Tousa, and we affirmed their convictions. However, we found that discretionary inventories had never been served on Barletta and Fontanello, who had not been identified to the district court as persons whose communications had been intercepted, and we concluded that the evidence as to them should be suppressed. Since it was obvious that without the wiretap evidence the government could not convict either of those defendants, we directed that judgments of acquittal be entered in their favor. We found it unnecessary to consider the claim of Fontanello that the evidence against him, even if admissible, was insufficient to sustain his conviction. *United States v. Civella,* 533 F.2d 1395 (8th Cir. 1976).

As to Barletta and Fontanello, the government applied to the Supreme Court for certiorari. On January 18, 1977 the Supreme Court decided the *Donovan* case, *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), and thereafter it vacated our judgment as far as Barletta and Fontanello were concerned, and remanded the case for further consideration in the light of *Donovan. United States v. Barletta,* 430 U.S. 902, 97 S.Ct. 1168, 51 L.Ed.2d 578 (1977).

The case is now before us on that remand. Supplemental briefs have been filed on behalf of Barletta, Fontanello and the government, and the case as to those defendants has been reargued.

The Supreme Court held in *Donovan,* among other things, that a failure on the part of the government to comply substantially with the identification or inventory requirements of the Act does not necessarily call for a suppression of evidence obtained as a result of authorized interceptions, but indicated that in some circumstances suppression may be required.

The government contends here that *Donovan* dictates that the convictions of Barletta and Fontanello be reinstated and affirmed. The defendants contend that this case is distinguishable from *Donovan,* and that we should adhere to our original decision. And Fontanello renews his contention that the evidence against him was insufficient to convict.

The historical facts of the case are fully set out in our original opinion and need not be restated in detail.

On January 7, 1970 Judge Collinson authorized that a telephone listed in the name of Frank Anthony Tousa be tapped and conversations recorded during a period between January 8 and January 18. The phone was tapped and numerous conversations were recorded including certain conversations between Barletta and Tousa and one conversation between Fontanello and Tousa.

Under § 2518(8)(d) inventories of the interceptions should have been served on interceptees not later than April 18, 1970. On March 27, 1970 Judge Collinson ordered inventories served on the Civellas and Tousa and certain other persons not including Barletta and Fontanello, and the inventories were placed in the hands of the marshal for service. For an unexplained reason the inventories were not served on or prior to April 18. Tousa was served on April 23 and the Civellas were served on May 1.

Three successive indictments were returned in the case, each replacing its predecessor. The first was returned in October, 1970; the second was returned in March, 1971; and the final indictment was returned in October, 1971. Barletta and Fontanello were not charged in the first or second indictment.

During pretrial proceedings following the return of the third indictment, Barletta and Fontanello in fact received the information that they would have received had discretionary inventories been served on them as provided by § 2518(8)(d); and the taped recordings of the intercepted communica-

tions were made available to all of the defendants, including Barletta and Fontanello.

Despite the somewhat belated service of the inventories on the Civellas and Tousa, we, as indicated, held that there had been substantial compliance with the statute. In reaching a different result as to Barletta and Fontanello, we said:

A quite different situation is presented with respect to Barletta and Fontanello. As to them, no effort was made to comply with the inventory requirements of the statute and those defendants received no notice of the interceptions of their communications until the third indictment was returned nearly two years after the authorized wiretap had come to an end. And it would be stretching things too far to say that the fact that they received full information about the interceptions after they were indicted in the fall of 1971 amounted to a substantial compliance with the statute. The wiretap evidence should have been suppressed as to them.

*United States v. Civella, supra*, 533 F.2d at 1406.

The foregoing statement brings us to the question common to both defendants, namely whether this case is to be distinguished from *Donovan, supra*.

The *Donovan* case, like this one, involved plural defendants, and the government relied for conviction on evidence resulting from wiretaps authorized by the United States District Court for the Northern District of Ohio. Five of the defendants, Donovan, Buzzaco, Robbins, Merlo and Lauer, filed motions to suppress which were granted by the district court. The government appealed, and the Court of Appeals for the Sixth Circuit affirmed. The Supreme Court reversed the Court of Appeals.

It appears that none of the five defendants in *Donovan* who have been mentioned were named in the applications and authorizing orders as persons whose conversations were likely to be intercepted. However, Donovan, Buzzaco and Robbins were served with inventories. Merlo and Lauer, who correspond to Barletta and Fontanello in this case, were never served due to what the government called an "administrative oversight," 429 U.S. at 420, 97 S.Ct. at 664.

The interception period in *Donovan*, as extended, expired on January 10, 1973; inventories were served on 37 individuals including Donovan, Buzzaco and Robbins, in February, 1973. Two other persons whose names had been inadvertently omitted from the first list of names submitted to the district judge were served in September, 1973. The indictment was returned in November of that year. After the return of the indictment Merlo and Lauer learned that their conversations had been intercepted, and on November 26, 1973 there were made available to Merlo and Lauer "the intercept orders, applications and related papers." 429 U.S. at 420, n. 7, 97 S.Ct. at 664, n. 7.

In evaluating *Donovan*, we are concerned at the moment only with the complaint of Merlo and Lauer that they were never served with inventories. The Supreme Court dealt with that issue in Section II, B. of its opinion, 429 U.S. at 429–32, 97 S.Ct. at 668–70, and again in Section III, B. of the opinion, 429 U.S. at 438–39, 97 S.Ct. at 673–74.

The government took the position that although it was required to cause inventories to be served on all persons identified in the application and authorizing order, it was not required to cause inventories to be served on other individuals whose conversations had been intercepted unless there was a reasonable possibility that such persons would be indicted. The Supreme Court rejected that argument and held as far as discretionary inventories were concerned that the government might either supply the district court with categories of persons whose communications had been intercepted or with a list of names, but that if it took the latter course, the names of all interceptees must be supplied. Hence, the Court concluded that the government had failed to comply with § 2518(8)(d).

However, the Court held that that failure did not automatically require suppression of the evidence and that suppression as to Merlo and Lauer was not required. But, the Court did not rule out the idea that suppression might have been required in certain circumstances. It was said (429 U.S. at 439, n. 26, 97 S.Ct. at 673–74, n. 26):

> [26] Counsel for respondents Merlo and Lauer conceded at oral argument that the failure to name those respondents in the proposed inventory order was not intentional, Tr. of Oral Arg., at 32, and we are therefore not called upon to decide whether suppression would be an available remedy if the Government knowingly sought to prevent the District Court from serving inventory notice on particular parties. Nor does this case present an opportunity to comment upon the suggestion, recognized by the United States, Brief, at 49 n. 40, that suppression might be required if the agents knew before the interception that no inventory would be served.

Moreover, respondents Merlo and Lauer were not prejudiced by their failure to receive postintercept notice under either of the District Court's inventory orders. As noted earlier, the Government made available to all defendants the intercept orders, applications, and related papers. See n. 7, *supra.* And in response to pretrial discovery motions, the Government produced transcripts of the intercepted conversations.

In undertaking to distinguish this case from *Donovan,* Barletta and Fontanello state their positions in slightly different terms, but we will consider that on this phase of the case their arguments are essentially coextensive.

They would distinguish *Donovan* primarily on the basis of the fact that the time lapse between the end of the interception period and the date on which they finally received the information that they would have received had they been timely served with inventories was much longer than the time lapse that was involved in *Donovan,* and that is unquestionably true. From that premise they urge us to infer that the government intentionally withheld their names from Judge Collinson for the purpose of preventing them from being served with discretionary inventories, and they also urge us to hold that prejudice should be inferred or at least presumed from the lapse of time involved. The government urges against those inferences. Neither side has requested that the case be remanded for further proceedings in the district court, and we do not think that any useful purpose would be served in this case by a remand similar to that directed in *United States v. DiGirlomo,* 550 F.2d 404 (8th Cir. 1977).

It is clear to us that the failure of the government to cause these two defendants to be served with inventories was not inadvertent or due to any administrative oversight. In other words, we do not think that Barletta and Fontanello simply got lost in the shuffle as may have been the case with Merlo and Lauer in the *Donovan* case which involved a much larger number of people than did this case. On the other hand, there is no basis for any conclusion that either the Federal Bureau of Investigation or the Department of Justice acted in bad faith in failing to include the defendants in the list of names submitted to the district court, or that they were excluded from the list for the purpose of preventing them from being served with inventories or for any other improper purpose.

We think that the true explanation is that after evaluating the results of the interception and other evidence available to them the government prosecutors initially concluded that indictments should not be sought against Barletta and Fontanello, and thought that it was unnecessary to identify them to the district court as persons upon whom the service of discretionary inventories would be proper.[3]

---

**3.** We note that the Special Attorney of the Department of Justice assigned to the Kansas City "strike force" who was handling the case or his superiors did not follow a recommenda-

tion Special Agent Ouseley of the FBI made shortly after the termination of the interception period that Fontanello be indicted. The government prosecutors may well have

The Act went into effect on June 19, 1968, and the wiretap authorized by Judge Collinson in January, 1970 was a comparatively early interception under the statute. In 1970 and 1971 firm judicial guidelines with respect to compliance with the identification and inventory requirements of the Act had not been established. And, indeed, it was argued before the Supreme Court in the *Donovan* case that the government was required to identify in an application and authorizing order only the person in whose name the target telephone was listed, in this case Tousa, and that service of discretionary inventories on a person was required only if there was a likelihood that he would be indicted.

■ If, as *Donovan* holds, a complete failure on the part of the government to cause discretionary inventories to be served on a person does not *ipso facto* call for suppression, we are unwilling to hold that suppression is required merely because the government's failure, while not inadvertent, was due to a view of the requirements of the statute that turned out ultimately to be wrong.

Nor do we think that prejudice is to be presumed or inferred from the time lapse in question. As in *Donovan*, Barletta and Fontanello were supplied with the required data prior to trial. The evidence against them consisted of their conversations with Tousa. Those conversations and their contents were not established in evidence by testimony based on human memory, but by tape recordings which the defendants or their attorneys heard in advance of trial, and it has never been contended that the voices attributed to Barletta and Fontanello were not their own.

In sum, we agree with the government that this case cannot be distinguished from *Donovan*.

It now becomes necessary to consider the individual claim of Fontanello that as to him the evidence was insufficient to sustain the verdict.

■ In our original opinion, 533 F.2d at 1406–07, we said that the evidence against Fontanello was "extremely weak and consisted of nothing but the interpretation which an FBI expert placed on one ambiguous conversation on the telephone between Fontanello and Tousa." We adhere to our characterization of that evidence as being "extremely weak," but a person may be convicted properly on weak evidence if it is sufficient to convince a reasonable fact finder or body of fact finders beyond a reasonable doubt of the truth of the charge. And we are required to view the evidence in the light most favorable to the government. *United States v. Smith*, 477 F.2d 399, 400–01 (8th Cir. 1973); *United States v. Rischard*, 471 F.2d 105, 107 (8th Cir. 1973).

■ In passing upon the sufficiency of the evidence to sustain an ultimate finding of guilt following a bench trial, we apply the same standard of review that is applied where a defendant has been found guilty by a jury; that is to say, the finding must be sustained if it is supported by substantial evidence. *United States v. Rischard, supra.*

When the case was submitted to the district court it had been stipulated that the Civellas, Tousa and others had been engaged during the indictment period in a criminal conspiracy essentially as charged in the indictment and that overt acts had been committed in furtherance of the conspiracy. As far as Fontanello was concerned, the only question was whether he had been a member of the conspiracy.

There is no question that the conversation between Fontanello and Tousa took place, and that it related to bookmaking gambling. The conversation was conducted in part in the peculiar argot of bookmakers, and it was necessary for it to be interpreted by an expert if it was to be intelligible to the district court.

thought at the time that, as Fontanello now contends, his one conversation with Tousa was not a sufficient basis for an indictment. It was not until some point in time between March

and October, 1971 that the government changed its mind with respect to Fontanello and Barletta.

■ Special Agent Ouseley of the FBI qualified as an expert on the ways and language of bookmakers and expressed the opinion based on the Fontanello-Tousa conversation that Fontanello was a high ranking member of the "organization" or "outfit." That testimony was admissible in the discretion of the district court. Fed.Rules Evid. 702–704; *cf. Spinelli v. United States*, 382 F.2d 871, 892 (8th Cir. 1967), *rev'd on other grounds*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ We have considered a transcript of the conversation, which was brief as well as ambiguous. It clearly referred to an organized gambling operation in which Tousa and others unidentified were participants, and we think it a sufficient basis, although a weak one, for an expert to form the opinion that Fontanello was at least a member of the organization. The evidence was considered by an able and experienced trial judge, and it was for him to determine the weight to be given to the opinion of the expert. We cannot say that the testimony was insufficient to convince a reasonable fact finder beyond a reasonable doubt that Fontanello was an active member of the conspiracy; it made no difference, of course, where Fontanello stood in the conspiracy's hierarchy. The district judge was evidently convinced of Fontanello's guilt to the requisite degree of certainty, and we cannot say that the district court's finding of guilt was without substantial evidentiary support.[4]

We are advised by the clerk that our mandates in the cases of Barletta and Fontanello issued before the government applied to the Supreme Court for certiorari in their cases. Accordingly, we recall the mandates and reinstate the original judgments of the district court. Those judgments are affirmed.

## ON REHEARING

HENLEY, Circuit Judge.

On July 25, 1977 in connection with a motion for rehearing filed by the defendant, Thomas Fontanello, we entered an order staying our original mandates as to both Fontanello and his co-defendant, Barletta, and remanded the case to the district court for an evidentiary hearing such as had been ordered by another panel of this court in *United States v. DiGirlomo*, 550 F.2d 404 (8th Cir. 1977), after the Supreme Court of the United States had handed down its decision in *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). The district court was directed to make findings on the questions of "why appellants were not identified to the district court as persons whose communications had been intercepted and whether and to what extent, if any, they were prejudiced respectively by not being served with discretionary inventories of the interceptions as provided by 18 U.S.C. § 2518(8)(d)."

■ The hearing was held in due course, and the district court promptly certified to us its findings on the questions that had been submitted to it. The district court found in substance that while the failure of the government to identify these defendants to the district court as persons upon whom discretionary inventories might appropriately be served was not inadvertent, it was not motivated by any bad faith on the part of the government or by any desire to deceive the district court or to gain any unfair advantage over the defendants.[1]

---

4. As indicated, in passing upon the sufficiency of the evidence to sustain the conviction of Fontanello we have applied the "substantial evidence" test. We would have reached the same result had we applied the "clearly erroneous" standard which, of course, is more favorable to the defendant than is the "substantial evidence" standard.

1. As to Barletta, the district court found that there was no identification of Barletta's voice until after the original indictment was returned in October, 1970 and no positive identification of his voice until August, 1971. As to Fontanello, it was found that his voice was first identified on September 16, 1970, "although probably the positive identification that would stand up in court was not made until after three more interviews with Fontanello by FBI agents which continued into October of 1970." With regard to both defendants the district court found that the statutory time for the service of inventories expired on April 18, 1970,

On the issue of prejudice the district court found that both defendants were supplied with transcripts of their intercepted communications immediately after their indictment and were given access to the original tapes of their intercepted communications; that neither defendant ever contended that the voices which the government identified as those of the defendants were not their own voices; and that in the circumstances neither defendant was prejudiced by not being served with inventories.

The findings of the district court were based on oral testimony, and the able and experienced district judge was, of course, in a position to pass on the credibility of the witnesses and the weight to be given to their testimony, and we cannot say that his findings are without substantial evidentiary support or that they are clearly erroneous.

Although counsel for the respective defendants argue, as they argued originally, that there are controlling distinctions between this case and *Donovan*, we reject that argument, as we did before, and hold that in the circumstances here present the failure of the defendants to be served with discretionary inventories does not require that their convictions be reversed. We also adhere to our view that as to Fontanello there was substantial evidence to sustain the jury's verdict.

Rehearing denied. Let mandates issue forthwith.

several months before the first identification of the voice of Fontanello in September of that year. The district court stated: "At the time these identifications were made, there was no attempt to notify the Judge who had issued the wiretap order that these voices had been identified, presumably because the statutory time for service of inventories was so far passed."