STATE OF NEBRASKA, APPELLANT, V.
DOUGLAS R. HINCHION, SALVATRICE F. DIBIASE AND
SAM DIBIASE, ROBERT D. OLSEN, AND
JOHN CULLEN ET AL., APPELLEES.

299 N.W.2d 748

Filed December 12, 1980.   Nos. 43381, 43382, 43383, and 43384.

Donald L. Knowles, Douglas County Attorney, Robert C. Sigler, and Richard M. Jones for appellant.

J. William Gallup for appellees Cullen et al.

No appearance for appellees Hinchion, Olsen, and DiBiase.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and BURKHARD, District Judge.

McCOWN, J.

In these criminal cases, the State appeals from orders granting motions to suppress wiretap evidence. The four cases involve the same wiretap application and order and the cases have been consolidated on appeal.

These appeals were docketed prior to the release of *State v. Anderson and Hochstein, ante* p. 51, 296 N.W.2d 440 (1980). They were unaffected by that decision and are, therefore, disposed of under Neb. Rev. Stat. § 86-705(12) (Reissue 1976).

On November 1, 1979, the county attorney for Douglas County, Nebraska, filed an affidavit and application for an order authorizing the interception of telephone communications of John F. Cullen, Frank Nebbia, Thomas Kolosseus, Edward Paltani, and other individuals whose identities were then unknown, over two designated Omaha, Nebraska, telephone listings.

The affidavit of the county attorney recited how telephones are utilized by bookmakers in gambling operations. It recited that Thomas Kolosseus and Edward Paltani were known gamblers in Omaha, and that both had been convicted on multiple gambling counts in the years 1975 through 1977, and that some of these convictions were on the basis of authorized telephone surveillance. The affidavit also recited that, although police officers had conducted extensive surveillance in 1979 at the residence and business of Thomas Kolosseus and at a location in which Edward Paltani had been conducting illegal bookmaking operations in 1977, they had been unable to establish evidence as to where Kolosseus was conducting an illegal book-

making operation, or evidence to establish an illegal bookmaking operation by Paltani. The affidavit recited, however, that the officers believed there was going to be a merger between Kolosseus' gambling operations and the gambling operations of Edward Paltani.

The affidavit also recited that a reliable informant, whose reliability had been proven by previously providing true and accurate information concerning illegal gambling, had advised officers that John Cullen and Frank Nebbia were conducting an illegal gambling operation at 1348 South 24th Street, which was Cullen's residence, and were using telephone number (402) 346-8098 and another telephone, the number of which the informant did not know.

The informant, who had previously seen both men, also advised officers that, on October 19, 1979, Thomas Kolosseus and Edward Paltani were at 1348 South 24th Street, and had been there together on several occasions.

The officers checked computer records and found that John Cullen's residence was shown as 1348 South 24th Street, and that he had no criminal record. Frank Nebbia's residence was 308 South 49th Avenue, Omaha, and he also had no criminal record. Upon checking with the telephone company, the officers were advised that telephone number (402) 346-8098 was a nonpublished telephone number listed to John F. Cullen at 1348 South 24th Street, Omaha, Nebraska. That number had call waiting with three extensions. There was also a "teen line" at the same address, and the nonpublished telephone number was (402) 346-0595, and that number had two extensions and call waiting capabilities.

On the evening of October 22, 1979, officers checked the residence at 1348 South 24th Street. They found it to be a two-story single-family dwelling. Lights were on in the house but the shades were pulled. Five vehicles registered to various Omaha owners were parked in the area. One of the vehicles was registered to Judy Nebbia, whose residence was 308 South 49th Avenue. None of the vehicles were registered to Cullen. While the offi-

cers were conducting surveillance, an automobile pulled up and the driver went inside the residence. The officers checked registration information and found the car was registered to an individual the officers believed was the son of a deceased bookmaker.

At about 11 p.m. on the 25th of October, 1979, the officers again checked the residence. On that occasion, four vehicles were parked at the location, one of which was registered to Judy Nebbia and none of which were registered to Cullen. One of the four vehicles was registered to an individual who was believed by the officers to have been involved with another gambler. On one other occasion, the vehicle registered to Judy Nebbia was again seen at the South 24th Street residence.

The affidavit also recited that an officer who had conducted numerous surveillances of both Kolosseus and Paltani over the past 3½ years had never known them to be associated together, nor had he ever seen them meet, and that neither of them, during various surveillances, had ever been known to contact the other by telephone. Based on the information that the informant had given as to Kolosseus and Paltani being together at 1348 South 24th Street, the officer believed that Kolosseus and Paltani were attempting to enlarge and merge their gambling operations.

The affidavit recited that the affiant had been advised that the vice unit had an informant who was providing information which could and would provide officers with sufficient evidence to obtain a search warrant for 1348 South 24th Street and to arrest John Cullen and Frank Nebbia. The affidavit also recited that, although police investigative methods such as search warrants, surveillances, and informants might provide enough evidence to arrest John Cullen and Frank Nebbia, the affiant believed such methods would fail as to Kolosseus and Paltani. The application and affidavit, therefore, requested an order to intercept the communications of John Cullen, Frank Nebbia, Thomas Kolosseus, and Edward Paltani.

On November 1, 1979, based on the affidavit, the District Court entered its order finding that there was probable cause to believe that John F. Cullen had committed, or was about to commit, the offense of gambling, and there was probable cause to believe that the facilities from which communications were to be intercepted were being used to commit the offense of gambling; and that normal police investigative procedures appeared unlikely to be successful as to John F. Cullen's illegal gambling operation. The District Court found that John F. Cullen was the specific individual whose communications were to be intercepted and authorized the interception of telephone communications involving the offense of gambling over the two Omaha, Nebraska, telephone numbers listed to John F. Cullen and located at 1348 South 24th Street, Omaha, Nebraska.

As a result of information gathered from the interceptions authorized by the order of November 1, 1979, subsequent applications and orders for interceptions of telephone communications of various other individuals were later made and several defendants were charged with various felonies and misdemeanors thereafter. The defendants in the four cases involved here then moved the court for an order suppressing the intercepted communications resulting from the November 1, 1979, order and the several amendments and extensions to that order.

Hearing on the motions was held on February 28, 1980. Briefs were submitted and the matter taken under advisement, and on March 24, 1980, the District Court entered its order finding that the information received under the extensions and modifications of the order of November 1, 1979, were the result of that order and were, therefore, invalid if the original order was invalid. The court found that there was no basis shown for the manner in which the information was received by the allegedly reliable informant, nor any corroboration by subsequent investigation insofar as Paltani and

Kolosseus were concerned. The court also found that the order of November 1, 1979, was not based on a sufficient showing of probable cause; and that insofar as the alleged operations of Nebbia and Cullen were concerned, investigative techniques other than wiretapping would probably have been sufficient; and that the showing with respect to probable cause did not affirmatively demonstrate that other investigative techniques would not be successful. The District Court, therefore, sustained the motions of the respective defendants to suppress all intercepted wire communications obtained as a result of the order dated November 1, 1979, and the subsequent orders. The State has appealed under the statutory authorization of § 86-705(12) and of Neb. Rev. Stat. § 29-824 (Reissue 1979).

It should be noted that, although the original application and affidavit requested an order authorizing interception of telephone communications of Kolosseus, Paltani, Nebbia, and Cullen, the wiretap order found probable cause only as to John Cullen and authorized interception of his telephone communications only.

The statutes of this state authorizing the interception of wire or oral communications require that the application shall be made in writing upon oath or affirmation, including a full and complete statement of the facts and circumstances relied upon to justify the belief that an order should be issued. Neb. Rev. Stat. § 86-705 (3) (Reissue 1976) provides: "Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that: (a) There is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 86-703; (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; and (d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person."

The critical issue in these cases is whether the affidavit states facts sufficient to constitute probable cause to issue an order authorizing the interception of telephone communications of John Cullen. In passing on the validity of an order to intercept wire or oral communications, just as in the case of a search warrant, the court may consider only information brought to the attention of the magistrate. See *State v. Holloway*, 187 Neb. 1, 187 N.W.2d 85 (1971).

The U.S. Supreme Court has consistently required that any decision as to whether probable cause exists should be made by a neutral and detached magistrate rather than by a policeman. See *Johnson v. United States*, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948). The magistrate or commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause and should not accept without question the complainant's mere conclusion that the person has committed a crime. See *Giordenello v. United States*, 357 U.S. 480, 78 S. Ct. 1245, 2 L. Ed. 2d 1503 (1958).

While hearsay information is appropriate to be received by a magistrate on the issue of probable cause, it is not sufficient in itself unless a substantial basis for crediting the hearsay is presented to the magistrate and constitutes more than the mere conclusion of the informant. *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), established the rule that for an affidavit based on a tip

from an informant to be sufficient, the affidavit must set out some of the underlying circumstances sufficient to enable the magistrate to independently judge the validity of the informant's conclusion that the criminal activities were being carried on where and as he said they were, and some of the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable. Those rules have been consistently followed by this court. See, *State v. Holloway, supra; State v. Payne*, 201 Neb. 665, 271 N.W.2d 350 (1978).

In the *Spinelli* case, which also involved a gambling operation, the court expressed the underlying reason for the rule. "In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli* at 393 U.S. 416.

In the present cases, as well as in *Spinelli*, the informant's tip is a necessary element in a finding of probable cause. There is no allegation that the information given by the informant came from personal knowledge on his part, nor does the affidavit indicate in any fashion how the informant came to conclude that gambling operations were being conducted by Cullen at the residence in question. The informant advised the affiant that Kolosseus and Paltani were at the location of 1348 South 24th Street on October 19, 1979, but the affidavit does not state that the informant saw them there, nor does it give any information as to how or where he obtained that information. The same circumstances exist with respect to each separate item of information which came from the informant. Insofar as the circumstances disclosed by the affidavit are concerned, the informant's information may have been based on nothing more substantial than a casual rumor or even pure speculation.

In the absence of the information from the informant, the affidavit recited only that there were two unlisted telephone lines into a two-story single-family residence at 1348 South 24th Street, Omaha, Nebraska, one with three extensions, the other with two extensions, and both with call waiting service. The house was the residence of an individual, and presumably his family, and the individual had no prior criminal record of any kind. The affidavit also showed that, on two different occasions, there were several cars parked at the location, one of which was registered to a member of the household of a suspected gambler. The affidavit also recited that, on one occasion, the son of a deceased gambler had gone into the house. That information constituted the sum and substance of the showing with respect to probable cause to believe that Cullen was conducting an illegal gambling operation on the premises, if the information from the informant be disregarded.

In addition to the deficiencies on the issue of probable cause, the affidavit also affirmatively admitted that investigative techniques other than a wiretap would have probably produced evidence sufficient to obtain a search warrant for the premises and to arrest Cullen, and the District Court in these cases made a specific finding to that effect. The application and affidavit for the wiretap therefore failed to establish two of the four essential requirements set out in § 86-705(3).

The District Court specifically found that the order of November 1, 1979, was not based on a sufficient showing of probable cause and that the showing with respect to probable cause did not affirmatively demonstrate that other investigative techniques would not be successful. The District Court, therefore, sustained the motions of the respective defendants in these cases to suppress all intercepted wire communications obtained as a result of the order dated November 1, 1979, and the subsequent orders resulting from that order. That action was correct and is affirmed.

AFFIRMED.