**UNITED STATES of America, Plaintiff,**

v.

**John E. HOWELL, Douglas L. Lyons, James E. Hansen, Robert W. Rahe, Douglas R. Shanahan, Gene J. Abboud, Defendants.**

No. CR. 82–0–45.

United States District Court, D. Nebraska.

April 6, 1983.

---

**66**

Robert F. Kokrda, Asst. U.S. Atty., Omaha, Neb., for plaintiff.

J. William Gallup, Omaha, Neb., for defendant Howell.

S.J. Albracht, Omaha, Neb., for defendant Lyons.

Dennis Martin, Omaha, Neb., for defendant Hansen.

J.S. Barrett, Omaha, Neb., for defendant Rahe.

Jerold Fennell, Omaha, Neb., for defendant Shanahan.

William Pfeiffer, Omaha, Neb., for defendant Abboud.

## MEMORANDUM OPINION

SCHATZ, District Judge.

This matter came on for determination with reference to the defendants' objections (Filing Nos. 65, 67 and 71) to the magistrate's findings and recommendations (Filing No. 63) concerning the defendants' various suppression motions (Filing Nos. 43, 46, 47, 50, 52 and 54). The magistrate conducted evidentiary hearings and recommended to this Court on January 20, 1983, that all said motions be denied.

This Court exercised de novo consideration of all the testimony and the documentary evidence before the magistrate at the hearings, and carefully studied and reviewed the magistrate's findings and recommendations. Further, the Court heard oral argument pertaining to the defendants' objections and carefully reviewed defendants' objections and briefs in opposition to the magistrate's findings and recommendations, and being fully advised in the premises, the Court concluded that the recommendations of the magistrate should be adopted and entered its ruling from the Bench on March 24, 1983. The Court now enters this memorandum opinion to set forth the reasons for its ruling.

BACKGROUND

On November 13, 1981, state and federal law enforcement officials obtained a state court approval for a wiretap to be placed

on four phones believed to be involved in a gambling operation. In actuality, only three lines were monitored because of an interruption in service on one of the lines. Thereafter, for approximately three weeks, state and federal officials monitored the phone lines.

On December 6, 1981, the U.S. Attorney applied for eleven search warrants in connection with the above investigation. The application for the search warrants included the state wiretap application (which had been unsealed by the state court judge for that purpose) and some recitations of evidence obtained by the wiretaps. The United States Magistrate approved the search warrants and the entire warrant application (with wiretap application and wiretap evidence) was filed in the United States District Court Clerk's Office on December 10, 1981. The Omaha World Herald newspaper published a story on the actual searches on December 7, 1981, and an extensive article on the court documents on December 18, 1981. In the meantime, on December 9, 1981, the state court officially terminated the wiretaps. Then on December 14, 1981, the original tapes of the interceptions were sealed by the state court.

State and federal law requires that persons identified as having been intercepted must receive notice of the interception and an inventory of the calls. The judge who ordered the wiretap is to give this notice within a reasonable time, but no longer than ninety days after the termination of the wiretap.

The proper post-interception procedure was not followed in this regard. No one from the F.B.I. or the Omaha Police Department or the Sheriff's office communicated with the state court judge to enable him to send the notices. What did happen was that the Sheriff's office sent out most of the notices without the knowledge or approval of the state court sometime between February 16, 1982, and March 8, 1982.

Finally, on March 23, 1982, the state court judge was notified of the identities of the parties whose conversations had been intercepted. This was 104 days after the termination of the wiretap. The judge held a hearing at that point and concluded that state law had not been followed in some instances, chiefly the filing of the wiretap application and evidence, and the failure to obtain a notice from the state court to be sent to the intercepted parties. He also held that no notice was given to the defendants Lyons and Howell of the names of the other parties whose communications were intercepted. (Howell and Lyons were named in the original wiretap application so notice to them of the other parties is required.) The judge declined to ratify the actions of the public officials involved in all these post-interception irregularities. His Order of March 24, 1982, sets this out (attachment to Filing No. 47). Subsequently, United States District Court Chief Judge Urbom sealed the documents in the Clerk's office, and those are now referred to as Search Warrant # 146.

On July 22, 1982, the grand jury indicted the six defendants with violating 18 U.S.C. §§ 1955 and 2. Thereafter, all six defendants filed motions to suppress the evidence derived from the wiretaps. Defendant Abboud also sought to suppress the evidence obtained during the search warrant of his premises, Magistrate Richard Peck conducted an evidentiary hearing and on January 20, 1983, recommended that the Court deny all motions to suppress. Defendants Hansen, Howell and Rahe filed objections to the magistrate's findings and recommendations, which were argued to the Court at a hearing on March 1, 1983. On March 24, 1983, the Court entered its order (Filing No. 84) adopting the magistrate's findings and recommendations and denying all the motions to suppress.

DISCUSSION

At the outset this Court must address the issue of what law controls the suppression motions. The defendants, and chiefly defendant Howell, strongly argue that state case law and state statutory law ought to govern this Court's consideration of their motions because the wiretaps were conducted pursuant to a state court order.

The magistrate rejected this contention, adopting the position that in a federal prosecution, federal standards are to be applied in determining the admissibility of evidence. (Magistrate's Op., p. 3, citing *United States v. Collins*, 552 F.2d 243, 247 (8th Cir.) *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977). While this is certainly the correct statement of the law in this circuit, this Court also finds some merit to the defendants' position that state law ought to be considered given the special circumstances of this case.

In the instant matter state and federal officers conducted a joint investigation of alleged state and federal gambling offenses, and in the course thereof, procured a wiretap authorization from a state court judge who was acting pursuant to a state statute. In a similar situation, the Second Circuit Court of Appeals held that such applications must be tested against both federal and state law. *United States v. Vazquez*, 605 F.2d 1269, 1280 n. 26 (2d Cir.), *cert. denied, sub nom. Cortina v. United States*, 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1979).

■ The Second Circuit Court of Appeals has also stated in another case that state standards ought to be considered in determining whether to admit a wiretap obtained by a state officer acting under a state court order issued pursuant to a state statute when the alleged illegality extends to the conditions for the issuance and execution of the wiretap warrant. *United States v. Sotomayor*, 592 F.2d 1219, 1225 n. 13 (2d Cir.), *cert. denied, sub nom. Crespo v. United States*, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979). Since many of the grounds upon which the defendants base their motions to suppress deal with the sufficiency of the wiretap application which was prepared by a state official, this Court finds that state wiretap law is not irrelevant.

However, reference to Nebraska law in this matter results in the same analysis the magistrate found to be controlling. The Nebraska Supreme Court has recognized that the Nebraska wiretap statute, Section 86–701, *et seq.*, R.R.S.Neb.1943, and the Federal wiretap statute, 18 U.S.C. § 2510, *et seq.*, are virtually identical. *State v. Kolosseus*, 198 Neb. 404, 253 N.W.2d 157 (1977). The Nebraska Supreme Court continues to look to federal cases interpreting the federal statute when it interprets its own wiretap statute. *State v. DiMauro and Kessler*, 205 Neb. 275, 287 N.W.2d 74 (1980); *State v. Hinchion, DeBiase, Olsen and Cullen*, 207 Neb. 478, 299 N.W.2d 748 (1980).

Therefore, this Court notes that while it may be proper in some federal proceedings to consider applicable state wiretap law, in this case, such reference to Nebraska cases merely returns the Court's attention to the federal statute and applicable federal case law. This Court concludes, as did the magistrate, but for slightly different reasons, that these suppression motions must be judged in light of federal law.

■ Next the Court turns to the issue of the propriety of the joint investigators obtaining a state court wiretap approval which the defendants wish to characterize as an intentional bypass of federal procedures. Admittedly it appears less time consuming to obtain a state wiretap from a state judge than to obtain federal authorization. But that in and of itself hardly constitutes improper conduct. The Court agrees with the magistrate's findings that the provisions of 18 U.S.C. § 2516(2) expressly envision state court authorization of interceptions. This is so notwithstanding the fact that the state court order specifically authorized "Special Agents of the Federal Bureau of Investigation" as well as "Officers of the Douglas County, Nebraska, Sheriff's office" to conduct the wiretap, while the state statute seems only to contemplate authorization of state law enforcement officials. Further the Court cannot say that, in the context of a suppression motion, a joint state and federal investigating team may not seek state wiretaps to further their investigation of alleged state and federal gambling violations.

■ The next major argument offered by the defendants in support of their motions to suppress is that the application and affidavit filed in support of the intercept order lacked sufficient showing of probable cause. The defendants' chief contention in this regard is that the affidavit failed to demonstrate that other investigative techniques would have been inadequate to secure evidence for prosecution of the criminal violations in question. In the proposed findings and recommendations, the magistrate thoroughly set out the standards to be applied in this regard, properly construed the facts of this case in light of those standards, and correctly concluded that the instant affidavit met the requirements of 18 U.S.C. § 2518(1)(c) and § 86–705(c), R.R.S.Neb.1943. Although the present application and affidavit create the impression of being a "boiler-plate" request at times, the Court adopts the magistrate's findings and recommendations that they were sufficient to warrant the issuance of a wiretap order and hence not the basis on which to suppress the wiretap evidence. *See, e.g., United States v. Gerardi,* 586 F.2d 896 (1st Cir.1978).

■ Another ground urged by the defendants in support of their suppression motion focuses on the alleged misconduct of the agents during the execution of the wiretaps. The defendants, and primarily defendant Howell, maintain that the interceptions were not sufficiently minimized as required by the provisions of 18 U.S.C. § 2518(5) and point to the interception of a portion of a phone conversation between defendant Howell and his attorney. The Court has reviewed the transcripts of the entire wiretap, paying particular attention to the Howell call to his attorney and concludes, as did the magistrate, that the one instance of insufficient minimization, albeit improper, does not warrant suppression of all the wiretap evidence. The Court finds that in the main the officials made a reasonable and good faith effort to comply with the minimization provisions of the wiretap order. *United States v. Santora,* 600 F.2d 1317 (9th Cir.1979).

The last major argument urged by the defendants is that post-interception irregularities in the instant case mandate the suppression of all the wiretap evidence. The two chief areas of concern to the defendants were: (1) the inadvertent disclosure of parts of the wiretap application and evidence and resulting media coverage; and (2) the failure of the law enforcement officials to have the state court judge who had authorized the interceptions to order the post-wiretap inventory notice to be given to the parties that were intercepted.

■ The defendants, and chiefly defendant Hansen, maintained that 18 U.S.C. §§ 2518(8)(a) and (b) were violated when the wiretap application and the wiretap evidence (by way of affidavit of Agent Thomas Dillon) were filed by the magistrate with the Clerk of the United States District Court unsealed. Defendant Hansen at oral argument before this Court and in his briefs placed heavy reliance on *United States v. Gigante,* 538 F.2d 502 (2d Cir. 1976), in which the court found that violation of Section 2518(8)(a) provided an independent basis for suppression. Section 2518(8)(a) provides for the sealing of the tapes to safeguard against tampering with the evidence. In *Gigante,* the Second Circuit affirmed the lower court which had suppressed the wiretaps because the tapes were not sealed for at least eight months after the termination of the interceptions. Based on *Gigante,* the defendant urges the Court to derive the principle that the federal statute is meant to protect the confidentiality of the records as well as to protect the physical integrity of the tapes, and that any disclosure must result in suppression. While the Court considers the issue of confidentiality of the wiretap records an important one and regrets the inadvertent disclosure that occurred in this case, it must adopt the recommendations of the magistrate in this regard. The magistrate found no explicit violation of 18 U.S.C. § 2518(10)(a), which sets out the grounds upon which suppression may be required, and this Court agrees. Further, the Court is disinclined to construe the disclosure

problem in this case in the same light as a flagrant sealing violation as was the case in *Gigante*.

▮ The second post-interception irregularity which the defendants thought warranted suppression involves the improper notice procedure conducted by the authorities following the actual interceptions. The statutes require inventory notices to be sent by the judge who issued the wiretap order. Instead, in this case, the Sheriff's office sent the notice without first getting an order from the state court judge. Subsequently, the judge held a hearing and found the improper inventory notice procedure to be intentional non-compliance by the F.B.I. *In the Matter of the Application of the County Attorney of Douglas County, Nebraska,* Misc. No. 2–1129 (March 24, 1982, at p. 4. (Order attached to Filing No. 47.)

It is the defendants' contention that this intentional non-compliance automatically warrants suppression regardless of whether it was prejudicial to the defendants. They rely on a footnote in *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977) in which the Supreme Court expressly reserved decision as to whether suppression of such evidence might be proper if the government "knowingly sought to prevent the district court from serving the inventory notice on particular parties." 429 U.S. at 439, n. 26, 97 S.Ct. at 673–74, n. 26. Since the Court determined that neither of the individuals affected by the violation in that case had been prejudiced by failing to receive notice, *id.,* the Court did not consider whether suppression would be appropriate if actual prejudice were shown. Technically, the *Donovan* Court did not decide that suppression is required if there is an intentional violation of the notice requirement. *United States v. DiGirlomo,* 550 F.2d 404 (8th Cir.1977).

Subsequently the Eighth Circuit has had occasion to review a case in which the government's violation of the notice procedures was due to a mistake in law. *United States v. Barletta,* 565 F.2d 985 (8th Cir.),

*cert. denied,* 430 U.S. 905, 97 S.Ct. 1174, 51 L.Ed.2d 581 (1977). The Eighth Circuit actually remanded the case back to the district court on the inadvertence and prejudice issues in light of the *Donovan* holding. Then after reviewing the district court's findings that the government had not acted in bad faith, the Eighth Circuit refused to reverse the convictions. 565 F.2d at 993.

It is difficult to state with precision the rule to be derived from the *Donovan* footnote as it relates to the specific problem that developed in this case. The defendants argue that the intentional non-compliance with the notice procedure warrants suppression whether or not there was prejudice to the defendants. The government argues that the violation must be intentional and prejudicial. The magistrate did not think it was intentional and did not find any prejudice. Most of the cases that discuss *Donovan* mention both factors. The Court considers it a fair reading of the case to conclude that the proper inference is that the evidence obtained in the wiretaps should not be suppressed in the absence of showings of improper government motivation *and* prejudice to the defendants in question, and even then it is not automatic.

Two additional factors influence the Court to reject the defendants' position on this issue. All the defendants in this case received actual notice from the Sheriff's office. The only violation they point to is the fact that the state court judge did not personally order the notices. Most of the cases that deal with the notice issue involve cases where the defendants never received notice or received notice long after the wiretaps had taken place. It is arguable that the actual notice is a bar to any suppression argument based on non-compliance with the inventory requirement. *See United States v. Johnson,* 539 F.2d 181, 194 (D.C.Cir.1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977). Secondly, the defendants rely on the *Donovan* footnote as support for their suppression argument but fail to note that the Supreme Court wrote in the main body of the *Donovan* opinion that "... we do not

think that the post-interception notice was intended to serve as an independent restraint on resort to the wiretap procedure." 429 U.S. at 439, 97 S.Ct. at 674.

Based on the foregoing, it is the opinion of the Court that the failure to obtain an order from the state court judge before sending the inventory notices is not sufficient to warrant suppression.

■ Another argument that the defendants put forth was that the violations of state law (which the state court judge made findings in relation thereof) require this Court to suppress the wiretap evidence. The Court rejects this argument. This is a federal criminal prosecution. "[W]iretap or other evidence obtained without violating the Constitution or federal law is admissible in a federal criminal trial even though obtained in violation of state law." *United States v. Diaz*, 685 F.2d 252, 254 (8th Cir.1982), *citing United States v. Neville*, 516 F.2d 1302, 1309 (8th Cir.), *cert. denied*, 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1975).

Lastly, the Court adopts the magistrate's findings and recommendations regarding defendant Abboud's motion to suppress the evidence obtained in the search warrant.

CONCLUSION

Accordingly, after careful consideration of the entire matter, the Court denied the motions to suppress the wiretap evidence. This memorandum opinion sets forth the basis for the Court's Order rendered from the bench on March 24, 1983, adopting the magistrate's findings and recommendations and denying said motions.