## UNITED STATES v. FARRAR.

No. 732. Argued April 28, 1930.—Decided May 26, 1930.

*Assistant Attorney ·General Youngquist,* with whom *Attorney General Mitchell* and *Mr. John J. Byrne* were on the brief, for the United States.

626

*Mr. William H. Lewis,* with whom *Mr. James A. Cress-well* was on the brief, for appellee.

630

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

By indictment returned in the federal district court for Massachusetts, the defendant (appellee) was charged with unlawfully and knowingly having purchased intoxicating liquor fit for use for beverage purposes, in violation of the National Prohibition Act. The district court sustained a motion to quash the indictment on the ground that the ordinary purchaser of intoxicating liquor does not come within the purview of the act. 38 F. (2d) 515. The government appealed under the Criminal Appeals Act of March 2, 1907, c. 2564, 34 Stat. 1246; U. S. C., Title 18, § 682, and § 238 of the Judicial Code, as amended by the act of February 13, 1925, c. 229, 43 Stat. 936, 938; U. S. C., Title 28, § 345.

Section 3 of the Prohibition Act, c. 85, 41 Stat. 305, 308, makes it unlawful for any person to " manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this Act . . ."; but provides that " Liquor for nonbeverage purposes and wine for sacramental purposes may be manufactured, purchased, sold . . . but only as herein provided, and the commissioner may, upon application, issue permits therefor: . . . ."

Section 6 of the act, 41 Stat. 310, provides: " No one shall manufacture, sell, purchase, transport, or prescribe any liquor without first obtaining a permit from the commissioner so to do, except that a· person may, without a permit, purchase and use liquor for medicinal purposes when prescribed by a physician as herein provided . . . ." Following this language, the section regulates with much detail the issue, character, and duration of the permit, and the application therefor, which application, among other things, must set forth " the qualification of the applicant and the purpose for which the liquor is to be used." The form of the permit and application, and the

facts to be set forth therein are to be prescribed by the Commissioner of Internal Revenue, who is to require a bond in such form and amount as he may prescribe to insure compliance with the terms of the permit and provisions of the act. A large part of the act, including § 6, is devoted to the subject of the authorized manufacture, sale, transportation, and use of intoxicating liquor for nonbeverage purposes; while § 3 plainly deals with the prohibited traffic in such liquors for beverage purposes.

The government relies upon the literal terms of § 6, that " No one shall . . . purchase . . . any liquor without first obtaining a permit from the commissioner so to do . . ."; but, at the same time, frankly concedes that the application of this language to the present case is not free from doubt. The contrary view is that these words, considered in connection with the other provisions of § 6 and correlated sections, relate only to that class of persons who lawfully may be authorized to sell, purchase, or otherwise deal with intoxicating liquors for nonbeverage purposes, and who proceed to do so without a permit. That this defendant does not belong to that class, and could not, under any circumstances, have obtained a permit to make a purchase of the character here made, is not in dispute. The question thus presented is very nearly the same as that decided in *United States* v. *Katz*, 271 U. S. 354; and in principle is concluded by that case.

There, the defendants were charged with conspiring to sell intoxicating liquors without making a permanent record of the sale, in violation of § 10 of the act. The indictments were quashed in the district court on the ground that § 10, which required a permanent record to be made of sales, applied only to persons authorized to sell alcoholic liquor, and that the indictment failed to allege that either of the defendants held a permit or was otherwise author-

ized to sell. This court, in affirming the judgment, said (pp. 361–362):

"Of the thirty-nine sections in Title II of the Act, which deals with national prohibition, more than half, including the seven sections which precede § 10, contain provisions authorizing or regulating the manufacture, sale, transportation or use of intoxicating liquor for nonbeverage purposes. These provisions, read together, clearly indicate a statutory plan or scheme to regulate the disposition of alcoholic liquor not prohibited by the Eighteenth Amendment, in such manner as to minimize the danger of its diversion from authorized or permitted uses to beverage purposes. These provisions plainly relate to those persons who are authorized to sell, transport, use or possess intoxicating liquors under the Eighteenth Amendment and the provision of § 3 of the Act, already quoted." *

And it was held (p. 363) that "the words 'no person' in § 10 refer to persons authorized under other provisions of the act to carry on traffic in alcoholic liquors," not to the ordinary violator of a provision prohibiting transactions in respect of liquors for beverage purposes.

It is not necessary to repeat the citation of authorities or the pertinent canons of statutory construction set forth in the opinion to support this conclusion. We are unable to find any logical ground for holding that the words "no person" in § 10 are used in the restricted sense thus stated, but that identical words in § 6, which forms a part of the same general plan for controlling the authorized traffic in intoxicating liquors, may be given an unlimited application. Obviously the National Prohibition Act deals with the liquor traffic from two different points of view. In the case of beverage liquors, except for sacramental and medicinal purposes, the traffic is prohibited

---

* This refers to the portion of § 3 relating to the manufacture, etc., of liquor for nonbeverage purposes and wine for sacramental purposes.

absolutely and unconditionally; in the case of nonbeverage liquors, it is permitted but carefully regulated. The prohibitions in § 3 are with respect to the former; while those in § 6 are with respect to the latter. In the former the sale, but not the purchase, is prohibited; in the latter both are prohibited.

Since long before the adoption of the Eighteenth Amendment it has been held with practical unanimity that, in the absence of an express statutory provision to the contrary, the purchaser of intoxicating liquor, the sale of which was prohibited, was guilty of no offense. And statutes to the contrary have been the rare exception. Probably it was thought more important to preserve the complete freedom of the purchaser to testify against the seller than to punish him for making the purchase. See *Lott* v. *United States,* 205 Fed. 28. However that may be, it is fair to assume that Congress, when it came to pass the Prohibition Act, knew this history and, acting in the light of it, deliberately and designedly omitted to impose upon the purchaser of liquor for beverage purposes any criminal liability. If aid were needed to support this view of the matter, it would be found in the fact, conceded by the government's brief, that during the entire life of the National Prohibition Act, a period of ten years, the executive departments charged with the administration and enforcement of the act have uniformly construed it as not including the purchaser in a case like the present; no prosecution until the present one has ever been undertaken upon a different theory; and Congress, of course well aware of this construction and practice, has significantly left the law in its original form. It follows that, since the indictment charges no offense under § 6, it was properly quashed.

*Judgment affirmed.*