GEORGE BOLIVAR, Appellant, Respondent, v. ORA J. MONNAT, Respondent, Appellant.*

Fourth Department, March 18, 1931.

* See 135 Misc. 446.

*Fred L. Smith*, for the plaintiff.

*T. Arthur Hendricks*, for the defendant.

EDGCOMB, J.   Reading the complaint in connection with the bill of particulars served by the plaintiff, as we must on this motion (*Kronman & Co., Inc.,* v. *Public Nat. Bank of New York,* 218 App. Div. 624, 630; *Davison Coal Co., Inc.,* v. *National Park Bank,* 201 id. 309, 311; *Pease Piano Co.* v. *Taylor,* 197 id. 468, 470; affd., 232 N. Y. 504; *Andersen Trading Co., Ltd.,* v. *Brody,* 193 App. Div. 681; *Dineen* v. *May,* 149 id. 469), it appears that in May, 1926, at a place of public entertainment conducted by the defendant in the hamlet of Indian River, Lewis county, N. Y., the defendant wrongfully, unlawfully and knowingly sold and delivered to the plaintiff, for immediate consumption, whisky, which contained methyl or wood alcohol and other deleterious ingredients, rendering the same injurious to health; that plaintiff drank the whisky, and by reason thereof his eyesight was seriously impaired.   Upon this state of facts, the plaintiff seeks to recover upon two separate theories: (1) That defendant was guilty of a tort; (2) that defendant warranted the whisky to be fit for beverage purposes, and that there was a breach of such warranty.

The court below held the first cause of action good, but dismissed the second.   Both parties appeal.

In addition to the allegations above mentioned, plaintiff alleges

in the first count of his complaint that the article sold was food, and that the sale was violative of the provisions of sections 198 and 199 of the Farms and Markets Law of the State of New York, now known as the Agriculture and Markets Law of the State of New York. The court below held that the complaint stated a cause of action in negligence growing out of the violation by defendant of the mandate of said statute. (*Boliver* v. *Monnat*, 135 Misc. 446.) We do not think that the pleading can be upheld on any such theory.

It is true that an unexcused violation of a statutory requirement by the defendant would constitute a negligent act on his part (*Martin* v. *Herzog*, 228 N. Y. 164; *Giminski* v. *Irving*, 210 App. Div. 343), and if there was a causal connection between the infringement of such statutory duty and plaintiff's injury, defendant's conduct would constitute actionable negligence. (*Brown* v. *Shyne*, 242 N. Y. 176; *Corbett* v. *Scott*, 243 id. 66; *Klinkenstein* v. *Third Ave. R. Co.*, 246 id. 327.)

Section 198 of the Farms and Markets Law (Laws of 1922, chap. 48), now known as the Agriculture and Markets Law (as amd. by Laws of 1927, chap. 207), provides as follows: "No person or persons, firm, association or corporation shall within this State, manufacture, produce, compound, brew, distill, have, sell, offer or expose for sale, or serve in any hotel, restaurant, eating house or other place of public entertainment any article of food which is adulterated or misbranded within the meaning of this article."

Section 2, subdivision 4, of the same act declares that food "shall include all articles used for food, *drink*, confectionery or condiment by man or other animals, whether simple, mixed or compound." (Italics mine.) This definition has been since modified and amended. (See Laws of 1929, chap. 207, amdg. said § 2, subd. 4.)

Section 199, subdivision 7, declares that food shall be deemed adulterated if it contains methyl or wood alcohol in any of its forms.

Ordinarily, whisky would not be classed as a food. It is rather a stimulant, and is so defined in Doran's Medical Dictionary. The Legislature, however, has the right to give such a signification as it deems proper to any word or phrase used by it in a statute, even if such definition goes beyond the ordinary meaning of such term. It is claimed that the word "drink" in the legislative definition of "food" is broad enough to include whisky. Undoubtedly the ordinary beverage would come within such classification. But here it is sought to include within the legislative definition of food an article which has been outlawed as a beverage, not only by an act of Congress, but by the fundamental law of the land. While there is no statute in this State which makes the sale of liquor

illegal, the provisions of the Federal Constitution and the laws of the United States are the supreme law of the land, and the judges of this Commonwealth are bound thereby. (U. S. Const. art. 6, § 2.) It cannot be urged that the Legislature of this State ever intended to define as a food and to protect by legislation an article which the Nation in its Constitution and by act of Congress has declared shall not be manufactured, sold or transported.

It is urged that the article actually sold to the plaintiff does not come within the prohibition of the Volstead Act, because it contained wood alcohol, and was unfit for beverage purposes.

The word " liquor " and the phrase " intoxicating liquor," as used in the National Prohibition Act, include " alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine, *and in addition thereto* any spirituous, vinous, malt, or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume which are fit for use for beverage purposes." (41 U. S. Stat. at Large, 307, tit. 2, § 1; U. S. Code, tit. 27, § 4.) (Italics mine.)

It is true that the article sold by defendant was unfit for human consumption. But the complaint alleges that the beverage was whisky. Whisky is liquor within the purview of the National Prohibition Act, whether it is good or bad, and whether it is fit to drink or not. When Congress defined " liquor " and " intoxicating liquor," it had before it the knowledge possessed by the world at large that whisky, brandy, gin, rum and certain other beverages were well-known articles of commerce in common use, and that they contained more than one-half of one per cent of alcohol, and that they were actually intoxicating. Such beverages need no further description. But there were other preparations, not so well known, and not universally consumed for beverage purposes, which contained more or less alcohol, and which Congress thought might prove intoxicating, and the manufacture and sale of which that body deemed proper to prohibit. So there was added to this list of well-known intoxicants, the manufacture, sale and transportation of which were made unlawful, spirituous, vinous, malt or fermented liquor, by whatever name the concoction might be called, if it was fit for use for beverage purposes, and if it contained one-half of one per cent of alcohol. The clause " which are fit for use for beverage purposes " modifies and limits these unknown liquors mentioned in the latter part of the section. Whisky has been used for years, and is acknowledged as fit for human consumption, if taken in proper quantities. So when the plaintiff says that the defendant sold him whisky, he alleges the

sale of an article outlawed by the Federal Constitution and by the National Prohibition Act. The fact that the whisky turned out to be. adulterated, and to be unfit for human consumption, does not take the transaction out of the provisions of the Volstead Act.

If such an argument were to prevail, it would constitute an easy defense to many a bootlegger called upon to answer to a charge of violating the National Prohibition Act. He could say that the beverage which he sold was adulterated with some deleterious ingredient which made it unfit to drink, and, therefore, he had not violated the statute. No court would countenance such a defense.

In cases where a defendant has been accused of violating the National Prohibition Act, and proof has been made that the article sold was whisky, the People are not required to go further and allege or prove its alcoholic content, or its fitness for use as a beverage, because its sale is expressly and definitely prohibited, and because it is well known to be an intoxicating liquor of high alcoholic content. (*Strada* v. *U. S.*, 281 Fed. 143; *Hensberg* v. *U. S.*, 288 id. 370; *Heitler* v. *U. S.*, 280 id. 703; *U. S.* v. *Percansky*, 298 id. 991; *Singer* v. *U. S.*, 278 id. 415, 418; writ of certiorari denied, 258 U. S. 620; *Williams* v. *U. S.*, 3 F. [2d] 933; *Benson* v. *U. S.*, 10 id. 309; *Keen* v. *U. S.*, 11 id. 260; *Alksne* v. *U. S.*, 39 id. 62; *U. S.* v. *Silvia*, 28 id. 73; *Allshouse* v. *U. S.*, 38 id. 234; *Mulane* v. *U. S.*, 20 id. 903; *State* v. *Lewis*, 86 Minn. 174, 176; *Eagan* v. *State*, 53 Ind. 162, 163.)

I have, therefore, reached the conclusion that the beverage which was sold to the plaintiff was not food within the meaning of the Farms and Markets Law, now known as the Agriculture and Markets Law, and that there can be no recovery here upon the theory that the defendant violated that act.

But this does not necessarily mean that the first cause of action must be dismissed. Giving to the complaint the liberal construction required by section 275 of the Civil Practice Act, we think that it states a cause of action at common law in tort.

Eliminating and treating as surplusage the allegation that the article sold was food, and that the sale was violative of the provisions of the Farms and Markets Law, now known as the Agriculture and Markets Law, of the State of New York, we have left the statement that the defendant sold to the plaintiff for immediate consumption an article which the defendant knew contained methyl or wood alcohol and other deleterious ingredients, which rendered the beverage injurious to health. Such conduct constitutes an invasion of plaintiff's rights. A violation of a legal right knowingly committed gives to the injured party a cause of action against the

wrongdoer. (*Hoard* v. *Peck*, 56 Barb. 202; *Commonwealth* v. *Stratton*, 114 Mass. 303; *McCue* v. *Klein*, 60 Tex. 168; *Quinn* v. *Leathem*, L. R. [1901] A. C. 495, 510; *Hornstein* v. *Podwitz*, 254 N. Y. 443, 448.)

It is not necessary to define the nature of the action with meticulous accuracy. The element of negligence may be wanting because the act was done deliberately rather than carelessly. Under the authority of the *Stratton* and *McCue Cases* (*supra*) we would be warranted in calling it an action for assault and battery. But it matters not what it is named, whether negligence, assault and battery, or an action on the case, the fact remains that the complaint alleges a violation of a right or duty growing out of the relations existing between the parties, and this gives plaintiff a right of action against defendant for the damages sustained. The novelty of the action, or the want of an exact precedent, does not deprive the plaintiff of a remedy for defendant's unlawful act. (*Kujek* v. *Goldman*, 150 N. Y. 176.)

This brings us to a consideration of plaintiff's second cause of action, in which he seeks to recover because of an alleged breach of defendant's warranty. This count was dismissed upon the theory that the sale of the whisky in question was unlawful and invalid, and that, therefore, there could be no warranty, either express or implied, to be breached.

The National Prohibition Act provides that " No person shall manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this chapter." (41 U. S. Stat. at Large, 308, tit. 2, § 3; U. S. Code, tit. 27, § 12.)

While it is true that the statute gives to the Commissioner of Internal Revenue authority to consent to the manufacture, sale and transportation of liquor for non-beverage purposes, it is not claimed that any such permit had ever been issued to the defendant. The burden of showing such permission rests with him who asserts it. (*Adler* v. *Zimmerman*, 233 N. Y. 431, 438; *Albert* v. *U. S.*, 281 Fed. 511.) Such consent can only be given when the liquor is to be used for non-beverage purposes, and here it is alleged that it was not to be so used.

There can be no doubt that the sale of this whisky was illegal so far as the defendant was concerned. In doing what he did, he violated the National Prohibition Act. If the contract was illegal and invalid as to both parties, there could be no warranty, either express or implied, connected therewith, and, if there was no such warranty, there could be no breach thereof. A cause of action cannot arise out of an illegal contract. (*Adler* v. *Zimmer-*

*man,* 233 N. Y. 431; *Ernst* v. *Crosby,* 140 id. 364; *Goodrich* v. *Houghton,* 134 id. 115; *Pratt* v. *Short,* 79 id. 437, 445.)

The illegality of the enterprise would be a perfect defense to an action brought upon the contract, if both parties were equally guilty. (*Saratoga County Bank* v. *King,* 44 N. Y. 87, 94.)

The National Prohibition Act makes the sale but not the purchase of liquor unlawful. The ordinary buyer of intoxicating liquor for beverage purposes does not come within the interdiction of the act. (*United States* v. *Farrar,* 281 U. S. 624.)

We, therefore, have a transaction which is illegal as to the defendant, but not as to the plaintiff. The parties to the contract are not *in pari delicto.* The agreement in question is not *malum in se,* it is merely *malum prohibitum.* Plaintiff's act, while it is not to be commended or encouraged, and while it resulted in causing the defendant to violate the statute, cannot be said to involve any moral turpitude. Under these circumstances, the plaintiff, who, from a strictly legal standpoint, was not a wrongdoer, is not necessarily to be denied relief, especially when such denial will benefit the guilty party at the expense of one who has violated no statute. (*Tracy* v. *Talmage,* 14 N. Y. 162; *Irwin* v. *Curie,* 171 id. 409.)

To borrow the language of Lord MANSFIELD: " The objection, that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant." (*Holman* v. *Johnson,* 1 Cowp. 341.)

This is not a case where the plaintiff and defendant have conspired together to violate the statute, in which case the court would undoubtedly refuse to relieve either from the position in which he had deliberately placed himself. The plaintiff has violated no statute.

In *Irwin* v. *Curie* (*supra*) a broker placed in the hands of an attorney for collection certain claims which the broker's customers had against the Federal government for excess duties paid to the government, under an agreement that the attorney would divide his fees with the broker. The attorney breached his contract, and the broker sued to recover his share of the fees which had been collected. The action was defended upon the theory that the agreement was illegal and could not be enforced, because of the provisions of section 74 of the Code of Civil Procedure (now Penal Law, section 274), which forbade an attorney or counselor at law from promising, giving, or procuring to be promised or given, a valuable consideration to any one as an inducement to placing in his hands a demand of any kind for the purpose of bringing an action thereon. The Court of Appeals held that the plaintiff

could recover on the contract, notwithstanding the provisions of the statute. It was pointed out that the prohibition was directed to an attorney and not to a layman, and that the two were not *in pari delicto*, and that, while the courts would not interfere to relieve either party from the consequence of a contract which was *malum in se*, it would not refuse to act at the behest of the party who did not come within the ban of the statute, where the contract was merely *malum prohibitum*, notwithstanding the fact that both parties had participated in the illegal act.

I can see no distinction between the principle involved in the instant case and that in *Irwin* v. *Curie (supra)*, and upon the authority of that case I think that the court is not without power to enforce the warranty made by the defendant as to the wholesomeness of the liquor in question.

In this connection attention should be called to that portion of the National Prohibition Act which provides that " the provisions of this chapter shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented." (41 U. S. Stat. at Large, 308, tit. 2, § 3; U. S. Code, tit. 27, § 12.)

I think that the object of the statute as above expressed would be more successfully promoted, and that the source of supply would be more effectually shut off, by holding the seller to strict accountability for any misrepresentation which he makes concerning his illicit wares, than by giving him immunity from all responsibility for damages which flow from the inferiority of the article sold. Loss of one's property is ofttimes a most convincing argument, where all others fail.

For the reasons stated, I have reached the conclusion that a cause of action lies against the defendant for the breach of his contract of warranty, and that it was error to dismiss the second cause of action set forth in the complaint.

The opinion of the court below (135 Misc. 446) reveals the fact that a prior action was commenced against the defendant to recover upon the same theory as is set forth in the second count of the complaint here under consideration, and that the pleading in the other action was dismissed, on defendant's motion, upon the ground that it failed to state facts sufficient to constitute a cause of action. The opinion of the court on that motion will be found in 130 Miscellaneous Reports, 660. It is urged by defendant that the decision on the first motion is decisive here in so far as the second cause of action is concerned; that plaintiff's remedy, if he was dissatisfied, was to appeal, and not to bring another action for the same relief.

There can be no doubt that the first decision, whether right or

wrong, is binding on the parties, so long as it stands unreversed, and is a bar to another cause of action brought for the same cause, unless the plaintiff was given leave to plead over. (*Joannes Brothers Co.* v. *Lamborn*, 237 N. Y. 207.)

The record, however, is absolutely silent as to the former motion. Our only information upon the subject is derived from reading the two opinions of the court below, and from certain statements in defendant's brief, and of counsel on the argument. Defendant does not plead the former decision as a bar to plaintiff's right to recover on the second cause of action. We are confined to the record before us, and cannot go outside for information. Under these circumstances, we are compelled to treat and dispose of this matter as if it were an original proposition, and had never been passed upon before.

On the face of the complaint there is nothing which would justify the court in holding, as matter of law, that any act of the plaintiff necessarily prevented his recovery. He did not consent to purchase a poisonous beverage, and the jury could say that he thought he was drinking pure whisky.

We have, therefore, reached the conclusion that both counts of the complaint state facts sufficient to constitute a cause of action, and that the pleading should be sustained in its entirety.

All concur, except SEARS, P. J., and TAYLOR, J., who dissent and vote for affirmance in an opinion by SEARS, P. J. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

SEARS, P. J. (dissenting in part). I am in full accord with the position taken in the majority opinion to the effect that the complaint states a cause of action in tort. My dissent is confined to that part of the decision which reverses the order granting the motion to dismiss the second cause of action alleged in the complaint, based upon the breach of warranty arising out of the sale of intoxicating liquor. The argument of the majority opinion sustaining the alleged second cause of action in the complaint, as I understand it, is based upon the theory that because the National Prohibition Act imposes no penalty upon the buyer of intoxicants (*United States* v. *Farrar*, 281 U. S. 624), the buyer and seller are not *in pari delicto*, and the buyer can consequently maintain an action against the seller upon the contract. (*Irwin* v. *Curie*, 171 N. Y. 409.)

In my opinion the buyer and seller of intoxicating liquor for beverage purposes are *in pari delicto*, even though only one has rendered himself amenable to the criminal jurisdiction of the United States courts. The sale itself is prohibited by the 1st section of the Eighteenth Amendment of the Constitution of the

United States, which reads as follows: " After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited."

It is of no importance that the National Prohibition Act imposes the stigma of criminality upon the seller alone and leaves the buyer immune. The constitutional amendment makes no such distinction. The purpose of the amendment was to prevent trafficking in intoxicating beverages so that the prevalence of intoxication might be checked. We must construe the constitutional provision with its purpose in view. The constitutional amendment is self-executing. (*National Prohibition Cases*, 253 U. S. 350; *People* v. *Vandewater*, 250 N. Y. 83.) Its prohibition imports invalidity. It does not leave to the Congress and the States the power of regulation, but confers power upon the Congress and the several States only to enforce by appropriate legislation. While this State at present has in effect no such appropriate legislation, the Congress has enacted the National Prohibition Act and has made the sale of intoxicating liquors for beverage purposes a crime so far as the seller is concerned. The omission of the Congress to place the buyer in a criminal class is far from determining that the buyer is exempt from the prohibitory mandate of the United States Constitution. Congress has no power so to exonerate the buyer. A sale necessarily includes a purchase. Seller and buyer are necessary participants. A gift imports a receipt and donor and donee are necessary for its fulfillment. One cannot for a moment imagine that if the Congress had adopted no enforcement legislation and the State had not, a contract for the sale of intoxicating liquor for beverage purposes would have been enforcible in the courts by both seller and buyer, despite the constitutional provision. Nullification is not so easy.

To my mind the amendment acts upon the entire subject of sale, upon the acts and conduct of the purchaser, as well as upon the acts and conduct of the seller. The whole transaction is prohibited and condemned by the fundamental law of the land. No contract rights arise therefrom.

I, therefore, favor an affirmance of the order.

TAYLOR, J., concurs.

Order reversed on the law in so far as it grants defendant's motion to dismiss the second cause of action stated in the complaint, and motion to dismiss denied, and otherwise the order is affirmed, with ten dollars costs and disbursements to the plaintiff.