STATE OF NEBRASKA, APPELLEE, V. RANDALL UTTERBACK,
APPELLANT.
485 N.W.2d 760

Filed July 2, 1992.    No. S-90-905.

Vard R. Johnson, of Broom, Johnson, Fahey & Clarkson, for appellant.

Don Stenberg, Attorney General, and Barry Waid for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Arguing that the evidence used to convict him was obtained from his home pursuant to an invalid search warrant, Randall

Utterback appeals his conviction and 2- to 4-year prison sentence for possession with intent to manufacture, distribute, deliver, or dispense marijuana.

Utterback assigns as error the failure of the trial court (1) to suppress physical and visual evidence obtained at the defendant's home pursuant to an invalid search warrant, and (2) to place the defendant on probation.

We reverse Utterback's conviction and direct the district court for Dodge County to dismiss the charges against the defendant.

## STANDARD OF REVIEW REGARDING SUPPRESSION RULINGS

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold a trial court's findings of fact unless those findings are clearly wrong. *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991). In deciding whether the trial court's findings on a motion to suppress are clearly erroneous, the reviewing court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding the motion. *Id.*

A search warrant, to be valid, must be supported by an affidavit establishing probable cause, or reasonable suspicion founded on articulable facts. See *State v. Armendariz*, 234 Neb. 170, 449 N.W.2d 555 (1989).

It is beyond question that a motion to suppress is the appropriate remedy to exclude evidence which has been obtained through an invalid search warrant. See *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the search warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. See *United States v. Leon, supra.* The affidavit must affirmatively set forth the circumstances from which the status of the informant

can reasonably be inferred. See *State v. Payne*, 201 Neb. 665, 271 N.W.2d 350 (1978).

To determine the sufficiency of an affidavit used to obtain a search warrant, this jurisdiction has adopted the "totality of the circumstances" test set forth by the U.S. Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). See *State v. Groves, supra.* The issuing magistrate must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. See *id.*

The duty of an appellate court in determining whether probable cause existed at the time a search warrant was issued is to ensure that the magistrate had a substantial basis for concluding that probable cause did in fact exist. See *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991). Moreover, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the underlying affidavit. See *United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985). Evidence which emerges after the warrant is issued has no bearing on whether a warrant was validly issued. *State v. Groves, supra.*

## THE FACTS

At approximately 7 a.m. on March 1, 1990, a Fremont police detective and six or seven fellow law enforcement officers executed a no-knock search warrant at Utterback's home. Utterback shared his home with his wife and infant child. In various containers discovered at various locales in the Utterback house, police found 25 separate plastic bags which contained a total of 570 grams of marijuana. The police also found a postage scale and various items of drug paraphernalia.

The warrant which the officers executed authorized a search for automatic weapons, drug paraphernalia, and various controlled substances. The police detective obtained the warrant on the previous day from a Dodge County judge. The sworn affidavit executed by the police detective to obtain the

search warrant states in pertinent part:

The complaint and affidavit of [the police detective], Fremont Police Dept., Fremont, Dodge County, Nebraska, who, being first duly sworn upon his oath says:

That [the detective] has just and reasonable grounds to believe, and does believe, upon information, that there is concealed or kept as hereinafter described, the following property, to-wit: Marijuana, Cocaine, LSD (Lysergic Acid Diethlamide [sic]), PCP (Phencyclidine) Peyote and other controlled substances, together with the paraphernalia for using and distributing the same; Cash and records of transactions involving controlled substances; and automatic and semi-automatic weapons.

That said property is concealed or kept in, on, or about the following described place or person, to wit: A yellow single story, single family residence located at 321 North "K" St., Fremont, Dodge County, Nebraska.

That said property is under the control or custody of Randall and Marla Utterback.

That the following are grounds for issuance of a search warrant for said property and the reasons for his belief, to-wit: On February 28, 1990, your affiant was advised by an *individual who is neither a paid nor habitual informant* that a second individual named "Randy" was engaged in the distribution and sale of controlled substances at the residence described above. The informant advised that "Randy" lived at the above described residence with his wife. The informant gave a physical description of "Randy" which matches the physical description of Randy Utterback contained in Fremont Police Dept. files. *The informant advised your affiant that in the past six months (the informant) had purchased marijuana from "Randy" at the residence described above*, and had observed other sales of illegal drugs at said residence. The informant further advised your affiant that (the informant) had been inside said residence within the last five days, and had seen a large quantity of marijuana, and lesser quantities of hashish, cocaine, LSD, and PCP. The informant indicated to your affiant that (the informant)

was very familiar with illegal drugs, and the information furnished to your affiant indicated such knowledge.

The informant further indicated to your affiant that (the informant) had observed what (the informant) believed to be an AK 47 assault rifle and an Uzi submachine gun in said residence, together with other weapons. The informant advised your affiant that (the informant) had personally inspected these weapons, and that they were loaded with ammunition. The informant gave a description of these weapons to your affiant, and that description is consistent with an AK 47 assault rifle and an Uzi submachine gun.

Your affiant personally drove by the above described residence and observed an older model blue station wagon parked in the driveway of said residence bearing Nebraska license plate No. 5-B8618. According to records of the Dodge County Treasurer said vehicle is registered to Randy and/or Marla Utterback. Your affiant personally checked the records of the Fremont Department of Utilities and determined that the utilities were registered to Marla Utterback.

(Emphasis supplied.)

Throughout these proceedings, Utterback has (1) challenged the sufficiency of the police detective's affidavit to show the reliability of the informant who supplied information that contraband or evidence of a crime would be found at Utterback's home and (2) argued that with the knowledge the detective had of the circumstances under which the informant gave information concerning the defendant, the detective could not execute the search warrant in good faith.

## SUFFICIENCY OF THE AFFIDAVIT

Utterback argues that the search warrant was invalid in that the affidavit failed to establish the veracity of the confidential informant. To credit a confidential source's information in making a probable cause determination, the affidavit should support an inference that the source was trustworthy and that the source's accusation of criminal activity was made on the basis of information obtained in a reliable way. *United States v.*

*Stanert*, 762 F.2d 775 (9th Cir. 1985).

Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, see *State v. Hoxworth*, 218 Neb. 647, 358 N.W.2d 208 (1984); (2) the informant is a citizen informant, see *State v. Duff*, 226 Neb. 567, 412 N.W.2d 843 (1987); (3) the informant has made a statement that is against his or her penal interest, see *State v. Sneed and Smith*, 231 Neb. 424, 436 N.W.2d 211 (1989); and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given, see *United States v. Stanert, supra*.

Nowhere in the detective's affidavit to obtain the search warrant in this case is there an averment that the detective's informant had given reliable information in the past, nor is there an averment that the informant was a "citizen informant." A citizen informant is defined as

> " 'a citizen who purports to be the victim of or to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement. . . . A "citizen-informant" is distinguished from a mere informer who gives a tip to law enforcement officers that a person is engaged in the course of criminal conduct. . . . Thus, experienced stool pigeons or persons criminally involved or disposed are not regarded as "citizen-informants" because they are generally motivated by something other than good citizenship. . . .' "

*State v. Duff*, 226 Neb. at 571, 412 N.W.2d at 846. The status of a citizen informant cannot attach unless the affidavit used to obtain a search warrant affirmatively sets forth the circumstances from which the existence of the status can reasonably be inferred. See *State v. Payne*, 201 Neb. 665, 271 N.W.2d 350 (1978). Here, there is nothing in the detective's affidavit used to obtain a search warrant even hinting that the informant was "motivated by good citizenship."

## STATEMENT AGAINST PENAL INTEREST

The State argues that the assertion in the detective's affidavit

that "[t]he informant advised your affiant that in the past six months (the informant) had purchased marijuana from 'Randy' at the residence described above" was a statement against the penal interest of the informant. An admission by an informant that he or she participated in the crime about which the informant is informing carries its own indicia of reliability, since people do not lightly admit a crime and place critical evidence of that crime in the hands of police. See *State v. Sneed and Smith, supra.*

The act of *purchasing* marijuana is not a statutorily proscribed act in Nebraska. Neb. Rev. Stat. § 28-416(6), (7), and (8) (Reissue 1989) prohibit the possession of marijuana, and Neb. Rev. Stat. § 28-417(1)(g) (Reissue 1989) prohibits being under its influence, but nowhere in the statutes of the State of Nebraska is the *purchase* of marijuana expressly prohibited. There is nothing in the affidavit used to obtain the search warrant in this case that would establish, unequivocally, that the informant could be prosecuted for the crimes of possession or being under the influence of marijuana.

The U.S. Supreme Court, in *United States v. Farrar*, 281 U.S. 624, 50 S. Ct. 425, 74 L. Ed. 1078 (1930), offered an explanation as to why legislatures would choose to punish the seller, but not the buyer, of an illegal substance. In concluding that "*in the absence of an express statutory provision to the contrary, the purchaser of intoxicating liquor, the sale of which was prohibited, was guilty of no offense*" (emphasis supplied), the court opined that it probably was

> thought more important to preserve the complete freedom of the purchaser to testify against the seller than to punish him for making the purchase. [Citation omitted.] However that may be, it is fair to assume that Congress, when it came to pass the Prohibition Act, knew this history and, acting in the light of it, deliberately and designedly omitted to impose upon the purchaser of liquor for beverage purposes any criminal liability.

281 U.S. at 634. The Nebraska Legislature seems to have followed the same philosophy.

Other possible theories of criminal liability for the purchase of marijuana are the inchoate offenses of being an accessory, a

conspirator, or an aider and abettor to the crime of distribution or delivery of marijuana. Distribution is defined as the delivery of a controlled substance other than by administration or dispensation; delivery is the actual, constructive, or attempted transfer *from one person to another* of a controlled substance. Neb. Rev. Stat. § 28-401(10) and (13) (Reissue 1989). A distributor is a person who distributes a controlled substance. § 28-401(10).

*Accessory Liability.*

An accessory to a felony is one who, with the intent to interfere with, hinder, delay, or prevent the discovery, apprehension, prosecution, conviction, or punishment of another for an offense, (1) harbors or conceals the other; (2) provides or aids in providing a weapon, transportation, disguise, or other means of effecting escape or avoiding discovery or apprehension; (3) conceals or destroys evidence of the crime or tampers with a witness, informant, document, or other source of information, regardless of its admissibility in evidence; (4) warns the other of impending discovery or apprehension other than in connection with an effort to bring another into compliance with the law; (5) volunteers false information to a peace officer; or (6) by force, intimidation, or deception obstructs anyone in the performance of any act which might aid in the discovery, detection, apprehension, prosecution, conviction, or punishment of such person. Neb. Rev. Stat. § 28-204 (Reissue 1989). The act of purchasing marijuana does not make the informant an accessory to the crime of distribution or delivery of a controlled substance under this statute.

*Conspiracy Liability.*

A conspirator is one who, with the intent to promote or facilitate the commission of a felony, agrees with one or more persons that they will engage in or solicit the conduct of a felony. See Neb. Rev. Stat. § 28-202 (Reissue 1989). The U.S. Supreme Court has adopted Wharton's Rule, an exception to the rules of conspirator liability: " 'An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily

require the participation of two persons for its commission.' "
*Iannelli v. United States*, 420 U.S. 770, 773-74 n.5, 95 S. Ct.
1284, 43 L. Ed. 2d 616 (1975). In such a case, the conspiracy is
deemed to have merged into the completed offense. See
*Iannelli, supra*. Wharton's Rule crimes are characterized by the
general congruence of the agreement and the completed
substantive offense. The rule applies only to offenses that
*require* concerted criminal activity, such as incest, bigamy,
adultery, and dueling, *id.*, and does not apply where the
substantive offense that is the object of the alleged conspiracy
can be committed by a single person, such as receiving,
concealing, and converting stolen property, see *Baker v. United
States*, 393 F.2d 604 (9th Cir. 1968), or possession of a
controlled substance with the intent to distribute, *United States
v. Rueter*, 536 F.2d 296 (9th Cir. 1976).

By statutory definition, the delivery or distribution of a
controlled substance requires the concerted action of two
persons, the transfer of a controlled substance *from one person
to another*. § 28-401(10) and (13). Wharton's Rule therefore
exempts from prosecution for conspiracy to commit delivery or
distribution either of the participants in the transfer of a
controlled substance.

*Aiding and Abetting.*

An aider and abettor is a person who aids, abets, procures, or
causes another to commit any offense and may be prosecuted
and punished as if such person were the principal offender. See
Neb. Rev. Stat. § 28-206 (Reissue 1989). However, again
because of the unique nature of the crime involved herein, there
is an exception to this liability for the participant whose acts are
not specifically deemed to be criminal.

The final exception to accomplice liability . . . occurs
when the crime is so defined that participation by another
is necessary to its commission. The rationale is that the
legislature, by specifying the kind of individual who is to
be found guilty when participating in a transaction
necessarily involving one or more other persons, must not
have intended to include the participation by others in the
offense as a crime. This exception applies even though the

statute was not intended to protect the other participants. Thus, one having intercourse with a prostitute is not liable for aiding and abetting prostitution, *and a purchaser is not an accomplice to an illegal sale.*

(Emphasis supplied.) *United States v. Southard*, 700 F.2d 1, 20 (1st Cir. 1983). *U.S. v. Farrar*, 281 U.S. 624, 50 S. Ct. 425, 74 L. Ed. 1078 (1930), states that absent statutory provisions expressly prohibiting the purchase of intoxicating liquors, a purchaser who participates in the sales transaction of illegal intoxicating liquor is guilty of *no* offense. *Tyler v. State*, 587 So. 2d 1238 (Ala. App. 1991), citing *Farrar*, acknowledged that Alabama statutes did not prohibit the *purchase* of a controlled substance and that the acts of the purchaser are prohibited only by the statutes regarding possession and receipt.

Thus, where an illegal drug sale is consummated there are two separate statutory offenses committed, one by the seller, the other by the buyer. . . . In this case, had the sale been consummated and the appellant had received the pills, the appellant would have been guilty of possession. *However, he would not have been guilty as an accomplice of the distribution of the pills.*

(Emphasis supplied.) *Tyler*, 587 So. 2d at 1242.

When the guilt of one party is excluded by the terms of the statute, it follows that such a participant cannot be held punishable as being an aider or abettor of the offense. See, *United States v. Southard, supra*; *Gebardi v. United States*, 287 U.S. 112, 53 S. Ct. 35, 77 L. Ed. 206 (1932). Twenty-five states have codified this exception to accomplice liability. See 2 Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law § 6.8 (1986). We conclude that a purchaser of a controlled substance is not an aider and abettor in the controlled substance's delivery or distribution.

Since Nebraska has not included the purchase of marijuana in its statutory prohibitions, and because no other theory of criminal liability applies, when the informant in this case admitted to purchasing marijuana he did not make a statement against his penal interest.

## CORROBORATION

The fourth method of determining the veracity of a confidential informant is through corroboration. Here, the affidavit reveals only that the police corroborated that Utterback lived at the described address, that the car in the driveway was registered to him, that the utilities at the house were registered to Utterback's wife, and that Utterback's physical description matched that given by the informant. If the police had chosen to corroborate the information regarding any criminal activities of Utterback's rather than merely corroborating these innocent details of his life, see *U.S. v. Gibson*, 928 F.2d 250 (8th Cir. 1991), or had the affidavit contained other corroborative sources of information about the same alleged criminal activity of Utterback's, see *United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985), the veracity of the informant might have been established in the affidavit. However, no such corroboration is reflected in the detective's affidavit used to obtain the search warrant in this case.

We conclude that the affidavit in support of obtaining the search warrant herein fails to establish the veracity and reliability of the confidential informant and that the county judge was clearly wrong in determining that it supported a finding of probable cause to issue a search warrant.

## GOOD FAITH RELIANCE

Even in the absence of a valid affidavit to support a search warrant, evidence seized pursuant to the warrant need not be suppressed where police act in objectively reasonable good faith reliance upon the warrant. See *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). For an affidavit based on a tip from an informant to be sufficient to support the issuance of a search warrant, the affidavit must set out some of the underlying circumstances from which the affiant concluded that the informant was credible or his information was reliable. See *State v. Hinchion, DiBiase, Olsen, and Cullen*, 207 Neb. 478, 299 N.W.2d 748 (1980).

In this case, the detective who signed the affidavit for the search warrant and who executed the warrant after it was issued

could not have relied upon the warrant in good faith. The deference accorded to a county judge's finding of probable cause neither precludes inquiry into the knowing or reckless falsity of the affidavit on which the determination was based, see *United States v. Leon, supra,* nor precludes inquiry as to whether the issuing magistrate or judge was misled by omissions from the affidavit, see *United States v. Stanert, supra.* Suppression is an appropriate remedy if the magistrate or judge issuing the warrant was misled by information in an affidavit that the affiant knew was false *or* would have known was false except for the affiant's reckless disregard of the truth, *United States v. Leon, supra, or* if the magistrate or judge was misled by omissions in the affidavit, see *United States v. Stanert, supra.* The role of the reviewing court is to determine whether the affidavit used to obtain a search warrant, when supplemented by the omitted material, would provide a magistrate or judge with a substantial basis for concluding that probable cause existed for the issuance of the warrant. See *United States v. Stanert, supra.*

Although the detective seeking the search warrant in this case had knowledge of certain relevant and important facts, he nevertheless consciously omitted those facts from his affidavit used to obtain a search warrant. The detective knew when he first met the informant that the informant was 16 years old, under arrest, in jail, and being investigated for involvement in a felony forgery. When the detective signed the affidavit for the search warrant and presented it to the county judge, he also knew that the informant had lied to him regarding the forgery complaint and that the informant had admitted to being a liar. The detective also knew that after confessing to being involved in committing forgery, the informant, in an effort to effectuate a plea bargain, made statements incriminating Utterback. No one else was with the 16-year-old informant when he was questioned by the detective in a police interrogation room, at which time the youth volunteered the information concerning Utterback.

At the suppression hearing, the informant testified under oath that the following statements he made to the police detective regarding Utterback were false: (1) that he knew Utterback, (2) that he had bought drugs from Utterback, (3)

that he had seen the drugs and guns he had described seeing in Utterback's house, and (4) that he had been inside Utterback's house. The informant testified he had once driven a friend to Utterback's home and waited outside while the friend obtained some marijuana from inside the house. The informant further testified that he had never personally bought drugs from Utterback or anyone else at Utterback's address.

Without comment, the district court overruled the defendant's motion to suppress the evidence seized from Utterback's home. In denying Utterback's motion for a new trial because of the alleged invalidity of the search warrant, the district judge stated he was not concerned with what the detective had left out of the affidavit, but, rather, with the fact that the informant had lied to the detective. The court was clearly wrong in failing to consider what had been omitted from the detective's affidavit used to obtain a search warrant. It was on the basis of the detective's affidavit that the county judge issued the search warrant.

The questions are whether the omissions from the detective's affidavit misled the county judge and whether the omitted information was material to a determination of probable cause. Omissions in an affidavit used to obtain a search warrant are considered to be misleading when the facts contained in the omitted material tend to weaken or damage the inferences which can logically be drawn from the facts as stated in the affidavit. See *United States v. Stanert, supra.* The inference to be drawn from the detective's affidavit in this case is that the informant came forward of his own accord to tell the police about the activities of Utterback. (He was neither a paid nor a habitual informant, so, without more information, the inference is that the informant was a citizen informant.) The fact that a police officer affiant seeking a search warrant fails to disclose to a magistrate or county judge that an informant is incarcerated at the time he makes statements incriminating another person does not alone automatically vitiate the search warrant, see *United States v. Ellison*, 793 F.2d 942 (8th Cir. 1986), nor does the failure to disclose that the informant was cooperating under a plea agreement, see *U.S. v. Flagg*, 919 F.2d 499 (8th Cir. 1990).

In this case, had the county judge been told that the

informant was an admitted liar, the inference that the informant was a believable citizen informant would have been substantially weakened, if not totally destroyed. It is widely held that an affidavit reciting that an undisclosed informant had given reliable information to the police in the past is sufficient to establish reliability for the purposes of issuing a search warrant. See, *United States v. Hunley*, 567 F.2d 822 (8th Cir. 1977); *United States v. Stanert, supra*; *State v. Hoxworth*, 218 Neb. 647, 358 N.W.2d 208 (1984). It logically follows that information from a known liar will not support an inference of trustworthiness. Had the county judge also been told that the informant had confessed to being involved in a forgery, a crime of moral turpitude, the judge's view of the informant's believability would have substantially diminished. Had the omitted facts been included in the detective's affidavit for the search warrant, the county judge undoubtedly would not have issued the warrant to search Utterback's home.

## CONCLUSION

Had relevant omitted facts been included in the police detective's affidavit used to obtain the search warrant involved here, the county judge could not have found that the informant in this case was reliable, and therefore, the warrant to search Utterback's home would not have been issued, since probable cause to issue it would have been lacking. When it is not established that an informant is reliable, a search warrant issued upon information supplied by such unreliable source is invalid. In this case, in executing the search warrant at the home of Utterback, the police did not act in objectively reasonable good faith reliance upon the warrant. Therefore, the trial court erred when it did not suppress all of the evidence seized at Utterback's home.

Because he was convicted upon illegally obtained evidence, Utterback's conviction is reversed. There being no evidence of Utterback's guilt other than that which was seized from the defendant's home, this cause is remanded to the district court with instructions to vacate Utterback's conviction and dismiss the charges against him.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.