Phyllis Owes, the appellant, was convicted for the unlawful distribution of cocaine and was sentenced to 15 years' imprisonment. That sentence included enhancements under both the Habitual Felony Offender Act and the schoolyard enhancement statute, Ala. Code 1975, § 13A-12-250. She raises four issues on this direct appeal of that conviction.
 I.
The appellant alleges racial discrimination in the prosecutor's use of his peremptory challenges of the jury venire.
In this regard, the record shows the following:
 "THE COURT: All right. For the record, State satisfied with the makeup of the jury racially and otherwise?
 "MR. KEAHEY [district attorney]: Judge, I'm satisfied with the makeup. I don't know if I'm satisfied with the way Mr. Lee [defense counsel] went about it.
 "THE COURT: Are you making an objection, you need to make it now.
 "MR. KEAHEY: Judge, I object. It appears that the attorney for the defendant has used his strikes in a manner which is racially motivated. He used all of his strikes to strike members from the venire, appears no other motive for him to have struck many of these. I know some of the reasons for a few. Based on voir dire, it's plain. There are some of these I can't fathom any reason on the record as to why he struck these individuals as to other than they are white.
 "THE COURT: Mr. Lee, do you have — defendant satisfied with the racial makeup of the jury?
 "MR. LEE: No, sir, your Honor, the State struck, the first three were black with no apparent reason. The fourth strike, Number 22, is the first white strike he had. Then he had no further strikes of any white people until Number 24, which was the second alternate, assuring that the jury, as far as he was concerned, all other factors being equal, he struck all the blacks he could with the exception of one.
 "My client is black, and I have had to use some of my strikes I would have used otherwise to counteract hi[s] striking all the blacks off the jury. He struck nine black people. My client being black, I believe we should have a jury of her peers as near as possible.
 "I believe his strikes were, without other explanation, racially motivated. I don't believe the voir dire would have anything to do with his strikes, the questions on voir dire.
"(Pause)
 "THE COURT: Both the State of Alabama and the defendant have objected to the makeup of the jury based on the strike pattern of the representative [of the] other side. Although the Court concedes that the strike pattern is rather unusual, the results of the strike is a jury, petit jury, twelve person jury of 41 percentile, which is the same percentile as the strike list of the 34 jurors from which we started.
 "Since the percentiles are the same, and I believe that the percent is very close to the population of Clarke County, Clarke County's population, I believe, is 42% black. So, even though the way it was arrived at is peculiar, the Court finds that Batson does not apply in this particular circumstance. Therefore, I will deny the State's challenge and the defendant's challenge, and we'll seat this jury." R. 27-29.
In this case, because the trial court found that "the strike pattern is rather unusual" and that "the way it was arrived at is peculiar," we cannot equate that court's ruling that "Batson does not apply" as a finding that both the prosecutor and defense counsel failed to establish a prima facie case of racial discrimination in the selection of the jury. The trial court has a "duty . . . to determine, first, whether the defendant [or the state] has made a requisite showing of the racially discriminatory use of peremptory challenges." Ex parteBranch, 526 So.2d 609, *Page 1385 
621 (Ala. 1987) (emphasis omitted). See also Lemley v. State,599 So.2d 64, 70 (Ala.Cr.App. 1992). Under Ex parte Williams,571 So.2d 987, 989 (Ala. 1990), an appellate court may not use a procedural basis to justify an alleged substantive error.
Batson applies equally to strikes exercised by the prosecutor and by defense counsel. Georgia v. McCollum, ___ U.S. ___,112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); Ex parte Pilot,607 So.2d 311 (Ala. 1992); Lemley v. State, 599 So.2d 64, 66 (Ala.Cr.App. 1992). When a veniremember is excluded on the basis of race, "the harm is the same," "[r]egardless of who invokes the discriminatory challenge." McCollum, ___ U.S. at ___,112 S.Ct. at 2353.
In Williams v. State, 634 So.2d 1034 (Ala.Cr.App. 1993), this Court held that the principles of Batson apply to the striking of white veniremembers by the prosecution. The Alabama Supreme Court has "assumed," for purposes of responding to argument, that the safeguards of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch,526 So.2d 609 (Ala. 1987), apply to the striking of white venirepersons. White Consolidated Indus., Inc. v. AmericanLiberty Ins. Co., 617 So.2d 657, 659 (Ala. 1993).
"When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created." Harrell v. State, 571 So.2d 1270, 1271
(Ala. 1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641,113 L.Ed.2d 736 (1991). See also Ex parte McWilliams, [Ms. 1911242, January 29, 1993] ___ So.2d ___ (Ala. 1993); Flowers v. State,608 So.2d 764, 765 (Ala.Cr.App. 1992); Jones v. State,603 So.2d 419, 420 (Ala.Cr.App. 1992).
However, statistical evidence may be used both to establish a prima facie case of discrimination and to show the absence of a discriminatory intent. Ex parte Bird, 594 So.2d 676, 680
(Ala. 1991); Ex parte Yelder, 630 So.2d 107 (Ala. 1992). In Exparte Williams, 571 So.2d 987, 990 (Ala. 1990), the Alabama Supreme Court held that the defendant's "evidence that the State struck four of the five black venire members [was] sufficient evidence of discrimination to establish her prima facie case for discrimination."
In this case, it appears that the trial court employed a "result-oriented" approach like the one condemned in Ex parteLynn, 543 So.2d 709, 712 (Ala. 1988), cert. denied,493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989): "[W]e decline to articulate the mechanical result-oriented approach urged by [the appellant], for such a procedure is not contemplated by the holding in Batson, supra." "[T]he removal of even one juror for a discriminatory reason is a violation of the equal protection rights of both the excluded juror and the minority defendant." Harrell v. State, 555 So.2d 263, 267 (Ala. 1989).
The Alabama Supreme Court and this Court have repeatedly set out the proper procedure to follow where allegations of racial discrimination in the selection of a trial jury are made. Among the more recent cases see Huntley v. State, 627 So.2d 1013
(Ala. 1992); Millette v. O'Neal Steel, Inc., 613 So.2d 1225
(Ala. 1992).
The cause is remanded with directions that the trial court conduct an evidentiary hearing and make the required determination of whether either party established a case of prima facie discrimination in the selection of the jury by the other party. If the trial court determines that defense counsel established a prima facie case of discrimination by the prosecutor, the court shall require the prosecutor to provide race neutral explanations for his strikes. If the trial court determines that the prosecutor established a prima facie case of discrimination by defense counsel, the trial court need not require defense counsel to explain his strikes. Any curative action with regard to a criminal defendant's use of peremptory challenges in a racially discriminatory manner must be taken at trial. A party may not profit on appeal from his own misconduct. Phillips v. State, 443 So.2d 1328, 1331
(Ala.Cr.app. 1983). The transcript of the evidentiary hearing and the written findings and conclusions of the trial court shall be filed in this Court within 60 days from the date of this opinion. *Page 1386 
 II.
The appellant argues that the evidence is insufficient to support her conviction for distribution.
The State's evidence shows that on May 15, 1992, Ronald Terrance Davis, working as an undercover informant for the police, purchased crack cocaine in the front living room of a house located at 260 Byrd Road in Thomasville, Alabama. Present at the sale were Deloris Washington, Sally Lanier, and the appellant.
Davis told Deloris Washington that he wanted to buy $50 worth of crack cocaine, and during the conversation concerning the sale, the appellant stated that "she had $23 on it." R. 35. Davis testified that his "agreement with [the appellant was that], me and her was going to go partially half on a $50 piece of crack cocaine." R. 36. "What we was doing, [was] putting together to buy cocaine by her [the appellant] knowing Deloris." R. 53. Davis testified that the appellant was not selling.
Davis put his $50 on the table. Deloris Washington picked up the money and put down the piece of cocaine. The appellant then "picked up [the cocaine], spinned around, broke off it," and gave Davis part. R. 36.
 The indictment charged that the appellant "or her accomplices Sally Lanier or Deloris Washington . . . did on to-wit: May 15, 1992, while at or near 260 Byrd Road in Thomasville, Alabama, unlawfully sell, furnish, give away, manufacture, deliver or distribute, to-wit: Cocaine, a controlled substance to Ronald Davis contrary to and in violation of Section 13A-12-211 of Code of Alabama . . . ." C.R. 4.
Section 13A-12-211, Code of Alabama 1975, states that "[a] person commits the crime of unlawful distribution of controlled substances if . . . he sells, furnishes, gives away, manufactures, delivers or distributes a controlled substance." "[I]n a prosecution for [complicity in] the sale of illegal drugs, the 'state is required to produce evidence which affords a reasonable inference that the defendant participated in someway with the seller in making the sale, and such linkage may be shown by circumstantial evidence.' " Mathis v. State,594 So.2d 690, 692 (Ala.Cr.App.) (quoting Snider v. State,406 So.2d 1008, 1012 (Ala.Cr.App.), cert. denied, 406 So.2d 1015 (Ala. 1981)) (emphasis added by the court in Mathis), remanded on other grounds, 594 So.2d 692 (Ala. 1991).
 "Under this definition of 'sale,' the participation of the defendant in, or his or her criminal linkage with, the sale is the basis of criminal liability, and not the actual act of the defendant in physically transferring the controlled substance to the buyer."
Martin v. Alabama, 730 F.2d 721, 724 (11th Cir. 1984). See alsoGreenwald v. State, 579 So.2d 38, 39 (Ala.Cr.App. 1991).
Aside from the fact that the appellant was present in the seller's house at the time of the drug transaction at issue here, there was no evidence that the appellant participated in the sale or had a criminal linkage with the seller in making the sale. Compare Mathis v. State, 594 So.2d 690 (when accused introduced buyer to seller, counted out buyer's money and presented it to seller, and agreed buyer could contact seller through accused in the future, evidence was sufficient to find accused guilty of distribution); Jones v. State, 593 So.2d 155
(Ala.Cr.App. 1991) (when accused procured buyer for the sale, was present when his companion handed buyer cocaine in exchange for money, and attempted to flee and to dispose of other cocaine in his possession when he learned buyer was undercover officer, evidence was sufficient to find accused guilty as an accomplice to the sale); Harrington v. State, 515 So.2d 53
(Ala.Cr.App. 1986) (when accused made a telephone call in response to buyer's request for marihuana, drove to and entered a residence with buyer's money, and emerged with bag of marihuana that he presented to buyer, evidence was sufficient to find accused guilty of furnishing marihuana).
Here the appellant participated in the transaction as abuyer under the terms agreed upon: that she would "split" the cocaine purchased with Davis. Because the appellant was a buyer of the cocaine, she could not be an accomplice of the seller of the cocaine. Section 13A-2-24, Code of Alabama 1975, states that *Page 1387 
 "[u]nless otherwise provided by the statute defining the offense, a person shall not be legally accountable for behavior of another constituting a criminal offense if . . . [t]he offense is so defined that his conduct is inevitably incidental to its commission."
In Tyler v. State, 587 So.2d 1238 (Ala.Cr.App. 1991), this Court discussed the fact that § 13A-2-24 ordinarily prevents the buyer in a drug transaction from being held to be an accomplice of the seller. "The general rule in Alabama is that the purchaser of an illicit substance is not an accomplice of the seller because the purchaser is guilty of an offense independent from the sale." Tyler v. State, 587 So.2d at 1242. See also 2 W. LaFave A. Scott, Substantive Criminal Law § 6.8(e) at 166 n. 96 (1986) ("a purchaser is not a party to the crime of illegal sale") (citing United States v. Farrar,281 U.S. 624, 50 S.Ct. 425, 74 L.Ed. 1078 (1930)).
Although the appellant could not be guilty as an accomplice of the seller, her conviction did not depend solely upon a theory of complicity. The indictment charged that "the appellant or her accomplices . . . did . . . unlawfully sell, furnish, give away, manufacture, deliver or distribute . . . [c]ocaine." Thus, if the State presented evidence that the appellant herself (not as an accomplice to another person) did "unlawfully sell, furnish, give away, manufacture, deliver or distribute" cocaine, then it proved the alternate charge laid in the indictment.
Citing McKissick v. State, 522 So.2d 3 (Ala.Cr.App. 1987), the attorney general argues that the appellant violated §13A-12-211, when she picked up the rock of cocaine, broke off a piece, and handed the rest to Davis: that is, by physically transferring a portion of the cocaine to Davis, the appellant " "furnish[ed], g[a]ve away, deliver[ed], or distribut[ed]" a controlled substance. We agree.
In McKissick, an undercover officer approached the accused and asked where he could buy some marihuana. The accused "replied that he knew someone who was doing business," walked to a nearby automobile, obtained a plastic bag from the individual in the driver's seat, and handed the bag to the undercover officer. 522 So.2d at 3. The officer handed $10 to the driver of the automobile and $1 to the accused for "setting up the deal." Id. Responding to the accused's argument that he could not be convicted as a seller because he was merely acting as a procuring agent for the buyer, see Hill v. State,348 So.2d 848 (Ala.Cr.App.), cert. denied, 348 So.2d 857 (Ala. 1977), this Court held that the accused's "transfer of possession" from the seller to the buyer constituted evidence of "furnishing" under an indictment charging that the accused "did sell, furnish, or give away" the controlled substance. 522 So.2d at 4.
Here, the reality of the transaction suggests that the appellant's transfer of possession was from herself as a buyer to Davis as a co-buyer. However, § 13A-12-211 makes no distinction among transferors and transferees. " '[F]urnishes' means to provide or supply and connotes a transfer of possession." Walker v. State, 428 So.2d 139, 141 (Ala.Cr.App. 1982). "'Furnish' means to supply by any means, by sale or otherwise, and a sale need not be shown." Greenwald v. State, 579 So.2d at 39. Whether the appellant's handing a portion of the controlled substance to Davis constitutes furnishing, giving away, delivering, or distributing, it is clear that the appellant violated § 13A-12-211 by providing, supplying, or transferring possession of part of the cocaine to Davis.
The appellant committed two offenses. By retaining "her" portion of the cocaine pursuant to the terms of the buy-agreement with Davis, the appellant violated § 13A-12-212
(unlawful possession or receipt of controlled substances). By breaking off and handing to Davis "his" portion of the cocaine, the appellant violated § 13A-12-211 (unlawful distribution of controlled substances). The State chose to prosecute the appellant for the more serious of the two crimes, the Class B felony distribution offense, rather than the Class C felony possession offense, and the State presented sufficient evidence to establish her guilt thereof.
 III.
The appellant contends that she was convicted on the uncorroborated testimony of an accomplice, the undercover informant Ronald *Page 1388 
Davis. Davis, however, was not the appellant's accomplice. InWalker v. State, supra, this Court held the following:
 "The defendant sold marijuana to an undercover agent. The testimony of the undercover agent did not require corroboration under Alabama Code Section 12-21-222 (1975). 'The undercover agent in this case was not an accomplice of the defendant: Brown v. State, 44 Ala. App. 135, 203 So.2d 700
(1967). He could not be indicted and convicted for the crime, either as principal or accessory. Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973).' Gilliland v. State, 291 Ala. 89, 93, 277 So.2d 901
(1973). See also Napier v. State, 344 So.2d 1235, 1237 (Ala.Cr.App.), cert. denied, 344 So.2d 1239
(Ala. 1977)."
Walker, 428 So.2d at 141. See also Ala. Code 1975, § 13A-3-22:
 "Unless inconsistent with other provisions of this article, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when it is required or authorized by law or by a judicial decree or is performed by a public servant in the reasonable exercise of his official powers, duties, or functions."
While Davis was an informant, rather than a police officer, it is clear that he was acting under the direction of law enforcement officer.
 IV.
The appellant's final claim, that her trial counsel was ineffective, is raised for the first time on appeal. It is well settled that claims of ineffectiveness of counsel cannot be raised for the first time on appeal. Ex parte Jackson,598 So.2d 895 (Ala. 1992); Ex parte McLeod, 627 So.2d 1065 (Ala. 1993).
The judgment of the circuit court is remanded for further proceedings as ordered in Part I of this opinion.
REMANDED WITH DIRECTIONS.
All Judges concur.